**TRADERS & GENERAL INS. CO. v. ROSS.**
**No. 4719.**

Court of Civil Appeals of Texas. Texarkana.
Oct. 31, 1935.

Rehearing Denied Nov. 14, 1935.

Collins & Fairchild, of Lufkin, Lightfoot & Robertson, of Fort Worth, Stone, Lassiter & Wells, of Henderson, and Nelson Scurlock, of Fort Worth, for plaintiff in error.

White & Yarborough, of Dallas, for defendant in error.

JOHNSON, Chief Justice.

This suit is by appellee, L. R. Ross, to set aside a ruling of the Industrial Accident Board upon a claim for compensation under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.) for injuries received in the course of his employment in the drilling of an oil well for D. S. Golding and T. B. Cochran, employers carrying compensation insurance with appellant, Traders & General Insurance Company. Plaintiff prayed for judgment awarding him compensation for total and permanent incapacity, at the rate of $20 per week, based upon his average weekly wage of $25 per week; and that appellant be required to redeem its liability in a lump sum settlement; and, in the event the court should determine that he was not entitled to a lump sum settlement, that compensation for permanent total incapacity be awarded him in weekly payments, at the rate of $20 per week, for the maximum period of 401 weeks from the date of his injury, August 14, 1932. Defendant answered by general demurrer and general denial. Upon findings of the jury, the court entered judgment awarding plaintiff compensation for total disability, at the rate of $20 per week, for a period of 300 weeks from the date of his injuries, payable in weekly installments, denying a lump sum settlement. From an order overruling its motion for new trial, defendant has perfected an appeal.

Under its first three propositions, appellant asserts that there is irreconcilable conflict in the findings of the jury, rendering the verdict ineffective as a basis for the judgment entered by the court. The particular questions and answers involved in this assignment of error are as follows:

"Special Issue No. 4: Do you find from a preponderance of the evidence that plaintiff, L. R. Ross, sustained total incapacity on or about August 14, 1932? Answer yes or no.

"Answer: Yes.

"Special Issue No. 5: If you have answered Special Issue No. 4 'yes' then you will answer Special Issue No. 5, but if you have answered Special Issue No. 4 by 'no' you need not answer Special Issue No. 5:

"Do you find from a preponderance of the evidence that such total incapacity, if any, sustained by L. R. Ross on or about August 14, 1932, naturally resulted from the injuries, if any, received by him on said date? Answer yes or no.

"Answer: Yes.

"Special Issue No. 6: If you have answered Special Issue No. 5 by 'yes' then answer the following special issue, but if by 'no' you need not answer this special issue:

"Do you find from a preponderance of the evidence that said total incapacity, if any, sustained by plaintiff, L. R. Ross, on or about the 14th day of August, 1932, is permanent? Answer yes or no.

"Answer: No.

"Special Issue No. 8: If you have answered Special Issue No. 6 'yes' then you need not answer Special Issue No. 8, but if you have answered Special Issue No. 6 'no,' then you will answer Special Issue No. 8:

"How long do you find from a preponderance of the evidence that the total incapacity, if any, of the plaintiff, L. R. Ross, has continued or will continue from the date said injuries, if any, were sustained? Answer in weeks, if any.

"Answer: 300 weeks.

"Special Issue No. 9: If you have answered Special Issue No. 6 'yes' then you need not answer Special Issue No. 9; but if you have answered Special Issue No. 6 'no,' then you will answer Special Issue No. 9:

"Do you find from a preponderance of the evidence that the plaintiff, L. R. Ross, has suffered or will suffer, any partial incapacity at the end of his period of total incapacity, if any? Answer yes or no.

"Answer: No.

"Special Issue No. 10: If you have answered Special Issue No. 9 'yes' then answer the following special issue, otherwise you need not answer this special issue:

"Do you find from a preponderance of the evidence that such partial incapacity, if any, sustained by the plaintiff, L. R. Ross, is or will be permanent? Answer yes or no.

"Answer: No.

"Special Issue No. 11: If you have answered Special Issue No. 10 by 'yes,' then you will not answer the following special issue; but if you have answered it by 'no,' then you will answer the following special issue:

"How many weeks of partial incapacity, if any, do you find from a preponderance of the evidence plaintiff, L. R. Ross, sustained as a natural result of the injuries, if any, received by him on or about August 14, 1932? Answer in the number of weeks, if any.

"Answer: 300 weeks.

"Special Issue No. 12: If you have answered Special Issue No. 9 'yes,' then answer Special Issue No. 12, otherwise you need not answer Special Issue No. 12:

"What percentage of partial incapacity, if any, do you find from a preponderance of the evidence, plaintiff, L. R. Ross, has suffered, or will suffer, during the period, if any, you have found he was or will be partially incapacitated? Answer by giving the percentage, if any, you find.

"Answer: ———."

It is the contention of appellant, in substance and effect, that the answer to special issue No. 11 is a finding that plaintiff sustained partial incapacity for a period of 300 weeks; that "total incapacity" negatives the existence of "partial incapacity"; that both cannot be sustained during the same period of time; that answer No. 11 conflicts with and destroys the effect of answers Nos. 4 and 8, which find that plaintiff sustained total incapacity for a period of 300 weeks from the date of his injuries; therefore, the judgment of the court allowing plaintiff compensation for total incapacity for the period of 300 weeks from the date of his injuries is without basis in the verdict.

In the case of Commercial Casualty Ins. Co. v. Strawn (Tex.Civ.App.) 44 S.W.(2d) 805, 807, it is held: "Its [appellant's] contention being that since the jury found that appellee was totally incapacitated for seven weeks beginning with November 13th, and in answer to other issues found

that appellee was 50 per cent. partially permanently incapacitated from November 13th [same date], that said findings are in conflict. * * * The finding of the jury that appellee was totally disabled [from November 13th] necessarily carried with it the lesser finding that he was partially disabled from November 13th."

In Millers' Indemnity Underwriters v. Schrieber (Tex.Civ.App.) 240 S.W. 963, it is in effect held, with respect to an affirmative answer to an issue conditioned as is issue No. 11, that such answer does not affirm as a fact the contingent premise upon which the question and answer is conditioned. This construction, when applied to issue No. 11 and the answer thereto, would not interpret the answer as containing an implied finding "that appellee had actually suffered partial incapacity," but such answer would mean that the duration of plaintiff's partial incapacity, if any partial incapacity he in fact sustained, would be 300 weeks. If the charge had anywhere contained the direct question requiring the jury to expressly find whether plaintiff had sustained any partial incapacity, sometimes termed the parent issue, and they had answered it in the affirmative, then such answer would have supplied the facts needed to be implied as the basis for the answer to No. 11, in order for it to read, "that plaintiff sustained partial incapacity, and that the duration of such partial incapacity would be 300 weeks." There was no such parent issue submitted in the court's charge, except question No. 9, which required the jury to find whether plaintiff has or will suffer any partial incapacity at the end of his period of total incapacity. To this question the jury answered in the negative. Therefore, we do not have a direct and express finding that plaintiff sustained partial incapacity, needed to support such implied finding in the answer to No. 11.

However, in the condition of the verdict in this case, it is not necessary for us to rest a holding upon the reasoning in either of the two cases above mentioned. There are other grounds which require us to overrule the assignment and to sustain the action of the trial court upon the verdict in the respect under consideration. The findings of the jury are to be considered as a whole, in the light of the pleadings and the evidence. Assuming that the answer of the jury to question No. 11 implies a finding that plaintiff sustained partial incapacity and that a finding of partial incapacity conflicts with, negatives, and destroys, a finding of total incapacity covering the same period of time, still the asserted conflict as to the answers under consideration may not in fact exist. The jury did not find what particular period of 300 weeks' time would be covered by, or during which would run, such 300 weeks of partial incapacity. When the period of said 300 weeks of partial incapacity is to begin is not stated by the jury. Therefore, to place the time of the beginning of said period of 300 weeks' partial incapacity requires construction of the whole record by the court. The question then arises: Should the period of said 300 weeks of partial incapacity be placed so as to begin on the date of plaintiff's injuries, thereby conflicting with the period of time during which the jury had found in answer to questions Nos. 4 and 8 that he would suffer total incapacity, or should said 300 weeks of partial incapacity be placed so as to begin at the end of his total incapacity, and thereby conflict with the answer to question No. 9? When the evidence is looked to in support of the construction to be given as reflecting the intention of the jury in this respect, we find that it is not disputed in the evidence, but that plaintiff suffered total incapacity for some period of time beginning with the date of his injuries. The duration of such total incapacity is controverted in the evidence. The testimony of appellant's doctor witnesses would show the duration of such total disability to be only a short period of time. The testimony of appellee, his nonexpert witnesses, and doctor witnesses, would show the duration of such total disability to be permanent. Therefore, in the light of the evidence, if we assume that the jury actually intended by their answer to No. 11 to find as a fact that plaintiff would suffer partial incapacity, it is most reasonable to conclude that they found that he would suffer such partial incapacity at the end of his total incapacity; which finding would conflict with answer No. 9, but would not conflict with their answers to Nos. 4 and 8, finding that plaintiff suffered 300 weeks total incapacity from the date of his injuries. The verdict therefore sustains the judgment entered by the court for 300 weeks of total incapacity.

Under its fourth proposition appellant complains of the action of the trial

court in permitting plaintiff's witness, one D. F. Leake, over appellant's objections, that same was immaterial and irrelevant and had no bearing on any issue in the case, to testify "that the boys working for Turman Oil Company took up a collection to buy groceries for him." The testimony was offered as tending to show plaintiff's financial condition and bearing upon the issue of whether or not a manifest hardship and injustice would result to plaintiff unless his compensation was paid in a lump sum. Upon this issue in cases arising under the Workmen's Compensation Act, evidence of the financial condition of the claimant is admissible. Texas Indemnity Ins. Co. v. Pemberton (Tex.Civ.App.) 9 S.W.(2d) 65; Texas Employers' Ins. Ass'n v. Davies (Tex.Civ.App.) 6 S.W. (2d) 792; Texas Indemnity Ins. Co. v. Wilson (Tex.Civ.App.) 281 S.W. 289.

Appellant's fifth proposition complains of the following proceedings had on the trial of the case: The testimony of J. D. Shackleford, witness for plaintiff, was read to the jury in the form of written deposition. A question was read in the presence of the jury asking the witness to state if he knew whether L. R. Ross furnished money to his father and mother. The witness answered: "I know indirectly that he did." At this juncture counsel for defendant objected on the ground that it was immaterial and irrelevant. The court overruled the objection, whereupon counsel for the defendant interposed the further objection, "for the reason that it is heresay, prejudicial and inflammatory." At this juncture counsel for plaintiff asked to withdraw question and answer from the jury. The court thereupon withdrew the matter from the jury, and struck same from the records. Counsel for defendant reserved a bill of exceptions to the question and answer having been read in the presence of the jury and then withdrawn. It is claimed by appellee that the evidence was offered on the issue of lump sum settlement and in connection with the testimony showing that the plaintiff prior to his injuries had been receiving the sum of $35 per week for a long period of time, and that this evidence was offered in connection with other facts to show that he was not a spendthrift or a man likely to waste his compensation if paid in a lump sum, by showing that he had not so disposed of his prior earnings. In the case of Consolidated Underwriters v. Saxon (Tex.

Com.App.) 265 S.W. 143, 146, it is said: "The provision for weekly payments was inserted [in the Workmen's Compensation Act], because such payments were, in the judgment of the Legislature, for the best interests of those for whom compensation was provided—to prevent squandering and waste. A 'special' case is not necessarily determinable by the relative poverty of the claimant. The thrift, intelligence, foresight, habit of frugality, capacity to manage and keep the money of the given claimant, might as well make his a special case as direst poverty. The statute undertakes to leave it to the judgment of the court or jury as to what constitutes a special case."

Necessarily, more than ordinary latitude is granted in investigating the issue of whether or not manifest hardship and injustice will result to an injured employee if his compensation is not paid in a lump sum. It appears that the testimony offered was objectionable, but it was not so far from the realm of admissibility as to cause a reversal of the case for having been offered. We do not think it could be classified as inflammatory, nor could it have worked any prejudice to the defendant, especially as it was withdrawn by the court from the jury. It is further noted that the jury found with defendant and against plaintiff on the issue of lump sum settlement. The assignment is overruled.

Appellant's sixth proposition reads: "The defendant duly presented to the court and requested in writing that the following special issues be submitted to the jury:

"Defendant's requested Special Issue No. 8: Do you find from a preponderance of the evidence that from and after January 1, 1933, L. R. Ross has without any reasonable excuse therefor intentionally refused to permit his body to exercise its normal functions?

"Defendant's requested Special Issue No. 9: Do you find from a preponderance of the evidence that such intentional and unreasonable refusal of L. R. Ross to permit his body to exercise its normal functions since January 1, 1933, (if you have so found) has been the sole and only cause of any disability for the performance of labor which L. R. Ross has suffered since January 1, 1933?

"And the plaintiff having pleaded that he was totally incapacitated as a result of

injuries alleged to have been sustained by him on or about August 14, 1932, and the defendant having filed a general denial and introduced considerable evidence to the effect that plaintiff should have returned to work and was able to work beginning on or about January 1, 1933, it was error for the court to refuse to submit said special issues to the jury."

We have examined the statement of facts and do not find any testimony, and appellant has not cited us to any, that plaintiff should have returned to work and was able to work on the particular date "beginning on or about January 1, 1933"; nor do we find any testimony raising an issue "that from and after January 1, 1933, L. R. Ross has without any reasonable excuse therefor intentionally refused to permit his body to exercise its normal functions."

Defendant's doctor witnesses, who examined plaintiff at divers times after his injury, testified to the effect that in their opinion plaintiff sufficiently recovered from his injuries to have resumed work within a short time after receiving his injuries, some estimating the time of such recovery as soon as from six or eight weeks after his injuries; but we do not find where any of them placed such date at or about January 1, 1933. On the other hand, plaintiff's doctor witnesses testified that plaintiff was suffering from a fracture of the fifth lumbar vertabræ and its consequent results upon the nervous system, as well as other injuries, and from which he continues to suffer. Dr. C. B. Carter, witness for defendant, testified that at the time he examined plaintiff in September, 1932, that he thought the injury was not serious and he would soon be able to return to work, and that it was his opinion that plaintiff's present nervous condition was brought about by apprehension and worries over the case. In this connection the court submitted to the jury appellant's specially requested charge No. 7, and the jury found as follows:

"Do you find from a preponderance of the evidence that any disability for the performance of labor which L. R. Ross has suffered since January 1, 1933, has resulted solely from natural causes not arising or growing out of the injury sustained by him on August 14, 1932? Answer yes or no, as you find the facts to be.

"Answer: No."

We think the above special issue was sufficient to cover any testimony offered by defendant which might be considered as nearly related to its specially requested issues Nos. 8 and 9, refused by the court. As further supporting the court's action in refusing defendant's said specially requested issues Nos. 8 and 9, it will be noted. Article 8307, § 4 (as amended by Acts 1931, c. 102, § 1 [Vernon's Ann.Civ.St. art. 8307, § 4]), reads in part as follows: "If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery, or shall refuse to submit to such medical or surgical treatment or other remedial treatment recognized by the State, as is reasonably essential to promote his recovery, the Board may in its discretion order or direct the Association to reduce or suspend the compensation of any such injured employee. No compensation shall be reduced or suspended under the terms of this Section without reasonable notice to the employee and an opportunity to be heard."

In addition to the want of any evidence to support appellant's specially requested issues Nos. 8 and 9, should it be considered that they come within the provisions of the above-quoted statute, it appears that appellant failed to plead or prove any compliance with such statute requiring notice to the employee, an opportunity to be heard, or that appellee has at any time failed or refused appellant's request to submit to examination and treatment by its physicians. In Texas Employers' Ins. Ass'n v. Galloway (Tex.Civ.App.) 40 S.W. (2d) 973, 976, it is said: "Appellant contends that since its doctor witnesses testified that a failure of appellee to exercise his leg might probably cause the loss of its use, a question was raised for the jury to determine whether appellee did 'willfully fail and refuse to exercise and use his leg, and if he did so refuse, he was not entitled to recover under the terms of Art. 8307, § 4,' supra. This contention cannot be sustained, because in no event would appellee be deprived of a recovery of compensation under this statute, since the only remedy given is that upon proper notice the Industrial Accident Board may 'reduce or suspend the compensation' until the employee refrains from 'unsanitary or injurious practices which tend to either imperil or retard his recovery.' It is also clear that this provision is merely a part of the statute authorizing the insurance company

to have an injured employee examined by doctors at all reasonable times, and before the insurer would be entitled to complain that an employee was engaged in unsanitary or injurious practices which tend to either imperil or retard recovery of his injury, it would have to allege a request to, and a refusal by, the employee to refrain from such injurious practices. Texas Employers' Ins. Ass'n v. Downing (Tex.Civ. App.) 218 S.W. 112. This construction of the statute is clearly correct in view of the other compensation statutes which provide that in no instance shall the insurance company avail itself of the defense of the contributory negligence of the employee."

Under its seventh proposition appellant complains of the failure of the court to withdraw from the jury, and instruct them not to consider same, certain statements by counsel for plaintiff in the course of his argument to the jury concerning one of defendant's counsel who was not present and who did not participate in the trial of the case. The statements complained of were: "Lightfoot wouldn't come to this jury and stand up and defy this man or say that he won't be paid, when he knows he ought to be paid." In the body of this bill of exceptions as approved by the court is the assertion of the attorney for plaintiff, "That is in answer to their argument," which statement refers to the argument objected to. The bill of exceptions having been accepted by appellant with such assertion a part of it, we would not be authorized to strike such assertion from the bill; nor would we be authorized to challenge the truthfulness of such assertion, and appellant has not seen proper to do so, either in the record, the bill, or in its brief. We do not have the benefit of the argument of counsel for appellant, to which the statement of counsel for plaintiff was in reply; therefore, we could not say that its utterance was such an improper reply as would reverse the case. In Casualty Reciprocal Exchange v. Stephens (Tex.Com.App.) 45 S.W.(2d) 143, 148, it is said: "An appellant who through his counsel has provoked the language used is not in a situation to ask the reversal of a judgment on such a ground."

Under appellant's eighth proposition it complains of that part of the argument of counsel for plaintiff in discussing the expert testimony of defendant's doctor witnesses, wherein he referred to them as "scientific guessers." We do not think this was error. Counsel for plaintiff had the right to argue his version of the weight to be given to expert testimony, and counsel for the defendant was as well authorized to extol its merits to the jury.

Appellant's ninth proposition complains of that part of the argument of plaintiff's counsel to the jury wherein he told the jury, in substance, that the plaintiff had remained at the courthouse or the county seat during the day while the other court attendants, including the jury, were enjoying themselves at home Thanksgiving Day. It appears that the trial judge recessed court during Thanksgiving Day, and all the court attendants and participants in this trial, except plaintiff, went to their respective homes. We do not place any approval upon this argument. It had no place in an argument to the jury. However, we do not believe that it is of the character requiring reversal of the judgment. The jury were evidently aware of the facts of the court having recessed, and its attendants, including the jury, celebrating Thanksgiving Day at home. They may or may not have known whether plaintiff celebrated it at his home or the town in which the case was being tried; but we do not think the information was in nature inflammatory, or that it could have had any special appeal to the jury as would in any way influence their verdict.

It is further complained of under appellant's ninth proposition of error, that in the course of his argument to the jury appellee's counsel said: "Now comes L. R. Ross and looks at you twelve men with outstretched arms, and I can see from his testimony of the pain he suffered up there the other day when they were twisting his leg, although he had been humiliated and stripped and looked at and criticised, and suffered all this pain for all these months, not a dollar that has been paid to him— not a dollar."

It appears in the record that during the trial of the case plaintiff submitted to an examination by defendant's doctors. It was testified to by plaintiff, as well as the doctors, that they manipulated the members of his body to determine whether or not he was suffering from the result of his injuries, and as to the extent of same. Plaintiff testified to having suffered pain. No objection was interposed to the argu-

ment at the time it was made. No error is shown in this complaint.

The judgment of the trial court will be affirmed.