TRADERS & GENERAL INSURANCE COMPANY v. L. R. ROSS.

No. 7032. Decided June 8, 1938.
(117 S. W., 2d Series, 423.)

*Collins & Fairchild,* of Lufkin, *Lightfoot & Robertson* and *Nelson Scurlock,* of Fort Worth, for plaintiff in error.

On the matter of improper argument of counsel. Fidelity Union Casualty Co. v. Cary, 25 S. W. (2d) 302; Indemnity Ins. Co. v. Harris, 53 S. W. (2d) 631; Floyd v. Fidelity Union Casualty Co., 24 S. W. (2d) 363.

*White & Yarbrough,* of Dallas, for defendant in error.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

This is a workmen's compensation case, the trial of which before a jury resulted in a judgment for defendant in error, the employee, against plaintiff in error, the insurer, for $6,-000.00, payable in 300 consecutive weekly installments of $20.00 each. The Court of Civil Appeals affirmed the trial court's judgment. 88 S. W. (2d) 543.

The application for writ of error contains five assignments of error, two of which present the contention that there is fatal conflict in certain answers of the jury to special issues and three of which complain of·portions of the argument made to the jury by counsel for defendant in error.

The jury found in answer to the first three issues submitted that defendant in error suffered personal injuries while working as an employee of the insured and that the injuries were received in the course of his employment. Issues Nos. 4 to 12 inclusive (omitting No. 7, which has no bearing upon the question of conflict) are as follows and were answered as indicated:

"Special Issue No. 4: Do you find from a preponderance of the evidence, that plaintiff, L. R. Ross, sustained total incapacity on or about August 14, 1932? Answer yes or no.
"Answer: Yes.

"Special Issue No. 5: If you have answered Special Issue No. 4 'yes' then you will answer Special Issue No. 5, but if you have answered Special Issue No. 4 by 'no' you need not answer Special Issue No. 5:

"Do you find from a preponderance of the evidence that such total incapacity, if any,· sustained by L. R. Ross on or about August 14, 1932, naturally resulted from the injuries, if any, received by him on said date? Answer yes or no.
"Answer: Yes.

"Special Issue No. 6: If you have answered Special Issue No. 5 by 'yes' then answer the following special issue, but if by 'no' you need not answer this special issue:

"Do you find from a preponderance of the evidence that said total incapacity, if any sustained by plaintiff, L. R. Ross, on or about the 14th day of August, 1932, is permanent? Answer yes or no.
"Answer: No.

"Special Issue No. 8: If you have answered Special Issue No. 6 'yes' then you need not answer Special Issue No. 8, but if you have answered Special Issue No. 6 'no,' then you will answer

Special Issue No. 8:

"How long do you find from a preponderance of the evidence that the total incapacity, if any, of the plaintiff, L. R. Ross, has continued or will continue from the date said injuries, if any, were sustained? Answer in weeks, if any.

"Answer: 300 weeks.

"Special Issue No. 9: If you have answered Special Issue No. 6 'yes' then you need not answer Special Issue No. 9; but if you have answered Special Issue No. 6 'no,' then you will answer Special Issue No. 9:

"Do you find from a preponderance of the evidence that the plaintiff, L. R. Ross, has suffered or will suffer, any partial incapacity at the end of his period of total incapacity, if any? Answer yes or no.

"Answer: No.

"Special Issue No. 10: If you have answered Special Issue No. 9 by 'yes' then answer the following special issues, otherwise you need not answer this special issue:

"Do you find from a preponderance of the evidence that such partial incapacity, if any, sustained by the plaintiff, L. R. Ross, is or will be permanent? Answer yes or no.

"Answer: No.

"Special Issue No. 11: If you have answered Special Issue No. 10 by 'yes,' then you will not answer the following special issue; but if you have answered it by 'no,' then you will answer the following special issue:

"How many weeks of partial incapacity, if any, do you find from a preponderance of the evidence plaintiff, L. R. Ross, sustained as a natural result of the injuries, if any, received by him on or about August 14, 1932? Answer in the number of weeks, if any.

"Answer: 300 weeks.

"Special Issue No. 12: If you have answered Special Issue No. 9 'yes,' then answer Special Issue No. 12, otherwise you need not answer Special Issue No. 12:

"What percentage of partial incapacity, if any, do you find from a preponderance of the evidence, plaintiff, L. R. Ross, has suffered, or will suffer, during the period, if any, you have found he was or will be partially incapacitated? Answer by giving the percentage, if any, you find."

"Answer: ———."

Plaintiff in error contends that there is conflict in the answers, in that the jury found in answer to Special Issues Nos. 4 to 8 that the injuries suffered by defendant in error caused total incapacity, not permanent, which continued, or would continue, from the date of the injuries for a period of 300 weeks, and that the jury found in answer to Special Issues Nos. 10 and 11 that defendant in error from his injuries suffered partial incapacity, not permanent, that continued, or would continue, for a period of 300 weeks from the date of his injuries, in other words, that defendant in error suffered total incapacity over a period of 300 weeks and also partial incapacity over the same period.

1 In our opinion it very clearly appears from an examination of the several issues and answers that no such conflicting findings were made. The jury expressly found, as is shown by its answers to issues numbered 4, 5, 6 and 8, that defendant in error was totally incapacitated for a period of 300 weeks from the date of the injuries. There was no issue submitting to the jury the question whether the incapacity during that period was partial. By Special Issue No. 9 the jury was asked to answer whether defendant in error suffered, or would suffer, any partial incapacity at the end of his period of total incapacity, if any. This issue was answered in the negative. Thus the jury expressly found in answer to the only issue submitting to it the question whether there was any partial incapacity that there was no partial incapacity. Special Issue No. 10 should not have been answered at all, as the jury was told to answer it only in the event that it answered Special Issue No. 9 in the affirmative. But as answered this issue means nothing more than that the jury found that if there was any partial incapacity it was not permanent. It is not to be taken as a finding that there was in fact partial incapacity. Issue No. 11 should not have been answered. The jury was instructed to answer it if it answered Issue No. 10 "no" but, as above shown, it should have given no answer to Issue No. 10, because it had answered Issue No. 9 "no." And like the answer to Issue No. 10, the answer to Issue No. 11 cannot be considered a finding that there was partial incapacity, because the answer, in view of the form of the issue, means that the jury finds that if there was any partial incapacity it continued for 300 weeks. We think, therefore, that there is no finding of partial incapacity and consequently no conflict with the finding of total incapacity of 300 weeks on which the judgment was based.

Construing the jury's answers most favorably to plaintiff in error, there can be found in the answers to Issue No. 10 and

Issue No. 11 nothing more than the implication of a finding of partial disability. Such implication should not be held sufficient to contradict and nullify the express findings that there was total incapacity and that it continued for the period of 300 weeks from the date of the injuries. Furthermore, as pointed out by Chief Justice JOHNSON in the opinion of the Court of Civil Appeals, if the jury's answer to Issue No. 11 is to be treated as implying a finding that defendant in error suffered partial incapacity, still there is no conflict with the findings with respect to total incapacity, because there is no finding by the jury that the 300 weeks of partial incapacity ran from the date of the injuries or concurrently with the period of total incapacity. We believe it is apparent from the form of the charge and the manner in which the issues were submitted that all of the questions and answers with respect to partial incapacity were intended to have reference to partial incapacity after the period of total incapacity. So construed, the answers to Issue No. 10 and Issue No. 11 may possibly by implication contradict the answer to Issue No. 9, but they do not contradict the findings of permanent incapacity for 300 weeks from the date of the injuries.

2  The jury's answers that defendant in error suffered personal injuries in the course of his employment that resulted in his total incapacity for a period of 300 weeks from the time when the injuries were received and that the average daily wage earned by defendant in error in his employment for the whole of the year immediately preceding his injury was $6.00, support the judgment rendered for compensation payable $20.00 per week for 300 weeks. The findings with respect to partial incapacity, reasonably construed, do not contradict the findings that support the judgment and are immaterial. This being true, apparent or possible conflict between the findings as to partial incapacity did not prevent the entry of a valid judgment. Southland-Greyhound Lines, Inc., v. Richardson, 126 Texas 118, 124, 86 S. W. (2d) 731; Brokaw v. Collett, (Com. App.) 1 S. W. (2d) 1090, 1092; Millers' Indemnity Underwriters v. Schrieber, 240 S. W. 963, 968 (application for writ of error refused); Graham v. Hines, 240 S. W. 1015, 1019 (application for writ of error refused); Krenz v. Strohmeir, 177 S. W. 178, 182 (application for writ of error refused).

The other three assignments of error present as grounds for reversal three different portions of the final argument to the jury by one of the attorneys for defendants in error. It is the opinion of Section B of the Commission of Appeals that the several portions of the argument of which complaint is made are objectionable and improper but that they are not of such nature

that the trial court's judgment should be reversed on account of them.

3 The Court holds, however, that there is reversible error in the action of one of the attorneys for defendant in error in making to the jury the argument hereinafter set out, especially in view of the failure of the trial judge, after objection, to instruct the jury not to consider it. The argument made is as follows:

"I tell you, these insurance companies, when they get after a man's scalp, they go after it. You see here, Honorable Stone, Lasseter & Wells, and Honorable Collins & Fairchild, and Honorable Lightfoot & Robertson, for the defendant. Well, now where is Lightfoot & Robertson? I, and we, all know Lightfoot. We have heard the name before. Listen, and you will hear the rustle of the wings. Why isn't he here? Lightfoot wouldn't come to this jury and stand up and defy this man, or say that he won't be paid, when he knows he ought to be paid."

Plaintiff in error objected to the argument when made, whereupon the judge presiding said: "Counsel will be confined to the record." In the opinion of the Court, this argument is an unwarranted comment upon the absence of one of the attorneys of record for plaintiff in error, and is in effect the giving of testimony by counsel who made the argument as to the attitude and opinion of the absent attorney in regard to the merits of the case, and thus is a statement outside of the record of such harmful nature that it cannot be said beyond reasonable doubt not to have caused injury.

The other improper arguments of which complaint is made need not be discussed, as they will doubtless not be repeated on another trial.

The judgments of the Court of Civil Appeals and the district court are reversed and the cause remanded.

Opinion adopted by the Supreme Court June 8, 1938.