**TEXAS EMPLOYERS' INS. ASS'N v. WELLS.**

**No. 5828.**

Court of Civil Appeals of Texas. Amarillo.

Dec. 1, 1947.

Rehearing Denied Jan. 12, 1948.

694

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, for appellant.

Scarborough, Yates, Scarborough & Black, of Abilene, for appellee.

LUMPKIN, Justice.

This is a workmen's compensation case. The appellee, H. L. Wells, was the employee. The appellant, Texas Employers' Insurance Association, was the compensation insurance carrier, and Mc's Well Servicing Company was the employer.

The accident complained of occurred on July 9, 1946. On that date the appellee was employed by Mc's Well Servicing Company. This company was operated by B. L. McFarland and was engaged in drilling and servicing oil wells. On the day of the accident the appellee was working on the Denver Producing and Refining Company's lease in Yoakum County, Texas, and while so engaged he was unexpectedly hurled against the cellar wall of an oil well by a master control valve. The appellee alleged that from the accident he sustained personal injuries which incapacitated him totally and permanently. As opposed to appellee's allegations, the appellant pleaded a general denial, partial and temporary incapacity, and claimed credit for five weeks' compensation paid the appellee.

The case was submitted to a jury which returned a verdict finding that the appellee had received an accidental personal injury, resulting in total incapacity for a period of five weeks and in permanent partial incapacity of 50 percent. Since the parties had stipulated that the appellee's average weekly wage prior to the accident was $60, the trial court, in accordance with the verdict, rendered judgment whereby the appellee should recover $20 per week from the appellant for a period of five weeks, beginning July 9, 1946, and $18 per week for 300 weeks, beginning August 13, 1946. From this judgment the appellant duly excepted and gave notice of appeal.

The appellant attacks the court's judgment in six points of error contending in points one and two that the court erred in admitting the testimony of Dr. William A. Snow of Abilene, Texas. At the request of appellee's attorney, Dr. Snow had examined the appellee on two occasions. During the first examination he made X-rays of various portions of the appellee's body and gave the appellee a complete physical examination. On this occasion Dr. Snow took a complete history from the appellee concerning the accident and the inconvenience and pain he had suffered since that time. The second examination occurred only a few days prior to the trial. On this occasion he examined the appellee but did not make any X-rays. However, on neither of the two occasions did Dr. Snow treat, or offer to treat, the appellee. At the trial Dr. Snow testified that as a result of the two examinations it was his opinion that the appellee was unable to perform hard manual labor; that any manual labor would cause the appellee pain and soreness in his back and hips to such an extent that he would not be able to continue working; that the soreness and pain were due to the injury; and that appellee's disability was total and permanent and had been so since

the date of the accident. Dr. Snow pointed out that he used the history given him by the appellee to direct his attention to the site of the injury, but that his diagnosis was based solely on his own findings and that in making his diagnosis, he excluded from his mind the statements made by the appellee.

The appellant objected to this portion of Dr. Snow's testimony citing the settled rule that a doctor who makes an examination solely for the purpose of testifying in court cannot base his opinion upon subjective symptoms. Texas Employers' Ins. Ass'n v. Wallace, Tex.Civ.App., 70 S.W.2d 832. In this case Dr. Snow was positive that the subjective symptoms, as related by the appellee in his history, played no part in arriving at his diagnosis—that his opinion concerning the appellee's condition, including whether he suffered pain, was the result of studying the X-rays and that the diagnosis was based on objective symptoms alone. In view of Dr. Snow's statements we believe the court did not err in admitting this testimony. Our courts have held that where the testimony of the physician is not based to any appreciable extent upon subjective or hearsay symptoms, as related to him by appellee, the doctor's testimony is admissible. Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 110 S.W.2d 108; Texas Employers Ins. Ass'n v. Clack, Tex.Civ.App., 112 S.W.2d 526, affirmed, 134 Tex. 151, 132 S.W.2d 399; Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332, Comm. of Appeals; Stayton et al v. Contreras, Tex. Civ.App., 150 S.W.2d 342, dismissed judgment correct; Texas Employers Ins. Ass'n v. Morgan et al., Tex.Civ.App., 187 S.W.2d 603, writ refused w.m.

The appellant's next contention grows out of the manner in which the jury answered two of the special issues. By its answers to Special Issues 5 and 7, the jury found the appellee permanently incapacitated, both totally and partially. The court discovered the conflict and instructed the jury in the following supplemental charge: "You are instructed that your answer to Special Issue 5 and your answer to Special Issue 7 are in conflict with one another and you are instructed to retire and recon-

sider your answer to two such special issues, 5 and 7." It will be noticed that these instructions do not indicate or suggest to the jury how the issues should be answered. However, the appellant complains of this action on the part of the trial court, saying the instructions limited the jury to Special Issues 5 and 7 and deprives it of the right to exercise its discretion in changing the answers to any of the issues in which conflicts exist. In order to understand this contention, we must briefly examine several of the special issues submitted to the jury. A study of the record reveals that after the case was submitted and after a period of deliberation, the jury returned its verdict containing the answers to the special issues. Among these special issues and answers were the following:

Special Issue 4 inquired whether the appellee sustained total incapacity for any length of time subsequent to July 9, 1946. The jury answered "yes."

Special Issue 5 asked if such total incapacity was permanent or temporary. The jury wrote "permanent."

Special Issue 6 asked the jury to determine the duration of the total incapacity. To this issue the jury made no finding.

Special Issue 7 inquired whether appellee sustained any partial incapacity. To this question the jury answered "yes."

Special Issue 8 asked if such partial incapacity was permanent or temporary. The jury found "permanent."

Special Issue 10 asked the jury to set the percentage of such partial incapacity. In answer to this special issue the jury wrote "50 percent."

The record further shows that after the jury's verdict was returned, the appellee contended that two of the jury's answers were in conflict and asked that the jury be retired to reconcile the conflict. The court granted the appellee's request and submitted to the jury the written instruction shown above. According to the appellant, this instruction limited the conflict to Special Issues 5 and 7. The appellant argued that the conflict should not be limited to 5 and 7 but should be extended to Special Issues 4, 5, 7, and 8; and that any instruction which did not include all of the con-

flicts might operate in the direction of inducing the jury to change the answers in a manner most favorable to the appellee, and that for this reason the court's instruction was upon the weight of the evidence. The court overruled the appellant's objection, the jury retired with the court's instruction and after a period of deliberation returned with the verdict upon which the court rendered judgment. In its answers to the special issues the jury had changed the finding of Special Issue 5 from "permanent" to "temporary" and had given the answer of "five weeks" to Special Issue 6. No change was made in the answer originally written to Special Issue 7.

We cannot agree in appellant's contention that the conflict extended to Special Issues 4, 5, 7 and 8. There was a conflict between Special Issues 5 and 7, since obviously the appellee could not be suffering a permanent total incapacity and a partial incapacity at one and the same time. In our opinion the trial court was acting in accordance with Rule 295, Texas Rules of Civil Procedure, when in writing he called the conflict to the jury's attention. As a matter of fact, in the language submitted, Special Issue 4 does not conflict with Special Issues 7 and 8. Special Issue asked whether the appellee suffered total disability for any length of time, and this finding of total disability for any length of time does not conflict with findings of permanent partial incapacity as reflected by the answers to Special Issues 7 and 8. Fidelity & Casualty Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780; Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805, writ refused; Traders & General Ins. Co. v. Ross, Tex.Civ.App., 88 S.W.2d 543, affirmed 131 Tex. 562, 117 S.W.2d 423; Traders' & General Ins. Co. v. Nunley, Tex.Civ.App., 80 S.W.2d 383, writ refused. Nor is Special Issue 5 in conflict with Special Issue 8. In the charge the jury was instructed to answer Special Issue 8 only in the event it had found in response to Special Issue 7 that the appellee had sustained partial incapacity as a result of the accident. The conflict was between Special Issues 5 and 7, and this would have continued to be the conflict no matter what answers the jury wrote to Special Issue 8. If the

jury had changed its answer to Special Issue 7 to the effect that the appellee did not suffer partial incapacity as a result of the accident, then necessarily under the court's charge the answer to Special Issue 8 would not have been made, or if it had been made, it would be immaterial. To the appellant's argument that the court's supplemental instruction to the jury confined the conflict and jury's action to Special Issues 5 and 7, we point out that during its second period of deliberation the jury changed its finding to Special Issue 6 from unanswered to "five weeks." This answer was in keeping with the answer of temporary total incapacity, the jury's reformed finding to Special Issue 5. Thus, for the reasons given, the appellant's third point of error is overruled. Federal Underwriters Exchange v. Arnold, Tex.Civ.App., 173 S. W.2d 972.

■■ In his fourth point the appellant asserts that the court erred in not requiring the jury to find the commencement date of the appellee's partial incapacity. The court's charge did not in fact contain an issue inquiring as to the commencement date of appellee's partial incapacity, and the court did overrule the appellant's timely objection to this omission. The appellant contends that since the commencement date of any partial incapacity suffered by the appellee was a portion of his case, rather than a defensive matter, under Rule 279, Texas Rules of Civil Procedure, the omission could be reached by objection to the court's charge, and that it was not incumbent upon the appellant to request his own issue. The appellant points out that the court had no right to ignore his demand that this issue be submitted to the jury since it was a matter upon which the evidence was in conflict. However correct the appellant may be in this assertion, we do not believe that in such a case this contention should be sustained. Only the ultimate and controlling issues raised by the pleading and the evidence must be submitted by the court. The commencement date of appellee's partial incapacity was not a controlling independent issue of recovery raised by the pleadings and the evidence. From the form of the charge and the manner in which the issues were submitted, it is ap-

parent that all of the questions and answers with respect to partial incapacity were intended to have reference to a period of partial incapacity following the period of total incapacity. The jury found that the appellee suffered temporary total incapacity for a period of five weeks. The appellee's permanent partial incapacity is presumed to have commenced when, at the expiration of five weeks, temporary total incapacity ended. Fidelity & Casualty Co. of New York v. Branton, supra; Commercial Casualty Ins. Co. v. Strawn, supra; Traders & General Ins. Co. v. Ross, 131 Tex. 562, 117 S.W.2d 423.

In his fifth point of error the appellant charges that the court erred in overruling his objection to a portion of the argument made by appellee's counsel. In the course of his argument appellee's counsel discussed the fact that in preparing himself to testify in the case, Dr. Snow had examined the appellee on two occasions. Counsel continued in this vein by saying, "We try to bring you the best evidence we can. Since we can't make an examination, we try to get you the best doctor. Oh, they had three doctors. But a poor man can't afford to have three or four doctors. * * *" At this point the appellant's counsel objected to the argument on the ground that since the defendant, an insurance company, had used three doctors, the argument that a poor man could not afford three or four doctors made a comparison of the appellee's poverty with the appellant's wealth. Generally speaking, the courts of this state have condemned this type of argument; however, in this case the evidence shows that the appellee had saved little money and had spent most of what he had saved during the period following the accident. Furthermore, evidence was introduced to show that the physicians who testified in the case expected to be paid for their services. Since our courts have held that in an argument to a jury counsel has the right to draw from facts in evidence every legitimate inference deducible therefrom, the trial court did not err in overruling appellant's objection. Traders & General Ins. Co. v. Peterson, Tex.Civ.App., 87 S.W.2d 322, error dismissed; Longmire v. Taylor et al., Tex. Civ.App., 109 S.W.2d 525, error dismissed;

Toole v. Christ Church, Houston, et al., Tex.Civ.App., 141 S.W.2d 720, writ refused; Blaugrund v. King, Tex.Civ.App., 73 S.W.2d 548.

Finally, the appellant contends that the jury's verdict of 50 percent permanent partial incapacity is, because of the insufficiency of the evidence, an unjust verdict. The record does reveal that following the accident on July 9, 1946, the appellee went to work on August 26, 1946, and that in the 50-day period which followed he worked a total of 47 days. Although Dr. Snow testified the appellee's incapacity was total and permanent, the jury rated his permanent partial incapacity at 50 percent. This jury finding is supported by the evidence, notwithstanding the appellee's work record following the accident. The fact he worked after the injury is not conclusive on the issue of his incapacity to work. Such facts should be considered along with the other evidence, and the finding of the jury on this issue will not be set aside merely because the facts show that the appellee worked after receiving the injury. Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130, writ refused, n.r.e., and the authorities there cited.

We have carefully reviewed the record in this case; finding no error, we affirm the judgment of the trial court.

## On Motion for Rehearing.

PER CURIAM.

The appellant again urges his fifth point of error contending that the argument made by appellee's counsel was of such a nature as to demand a reversal. A review of the record reveals that after appellee's counsel made the statement shown in our original opinion, the appellant objected and the court overruled his objection. The appellant's counsel did not continue or elucidate upon the subject of how many doctors his client was financially able to employ but passed off his previous statement by saying: "You just make your answers from the evidence, gentlemen. I believe you heard what these doctors testified."

Undoubtedly, under the holdings of our courts, no error would have existed if the trial court had sustained appel-

lant's objection. Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054; Carson v. Amberson, Tex.Civ.App., 148 S.W.2d 972, Dism.Judgm.Cor.; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855. In Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311, the Supreme Court laid down the rule that reversal will not follow where it clearly appears that no injuries could have resulted from the argument. In this case the appellee pleaded that as a result of the personal injuries sustained in the accident, he was totally and permanently incapacitated and Dr. Snow, his witness, so testified. The appellant's three medical witnesses did not consider the appellee's injuries that extensive. The testimony would have warranted a finding of total and permanent incapacity, but the jury fixed the appellee's incapacity as total for a period of only five weeks and determined that his permanent partial incapacity amounted to only 50 percent. From this action on the part of the jury, we believe it is clear that no injury to appellant resulted from this portion of appellee's argument or from the fact that the trial court overruled appellant's objection.