**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Walter Lee SHIREY, Appellee.**

No. 11299.

Court of Civil Appeals of Texas.

Austin.

May 19, 1965.

Rehearing Denied June 9, 1965.

Hardeman, Smith & Foy, S. Ancial Middlebrook, San Angelo, for appellant.

Webb & Stokes, Tom Webb, San Angelo, for appellee.

HUGHES, Justice.

This is a workmen's compensation case in which appellee, Walter Lee Shirey, recovered a judgment against Texas Employers' Insurance Association for total and permanent incapacity payable in a lump sum. Trial was to a jury.

Appellee made a motion, filed after the trial had commenced, that appellant's counsel be instructed "not to make any inquiry of any witness and not to make any statement to the Jury concerning the possible or potential beneficial effect of surgery upon the Plaintiff, WALTER LEE SHIREY, and further, not to ask any question of any witness designed or calculated to allude to any such potential benefit or to intimate that surgery is required on the Plaintiff's person or should be rendered to the Plaintiff or might alter or change his condition. Further, Plaintiff prays the Court by instruction in the absence of the jury, to make known to medical witnesses that they are not to base any estimate as to future disability of Plaintiff upon the hypothesis of subsequent surgery."

The transcript does not reflect that this motion was presented to and acted on by the Court, however, the statement of facts makes reference to a ruling made by the Court in chambers sustaining the motion. Also, the statement of facts contains a bill of exceptions in which it is shown that appellant offered and the Court excluded evi-

dence of the nature described in appellee's motion.

The Industrial Accident Board made its final decision on appellee's claim on January 16, 1964.

Appellee was injured on January 29, 1963.

On June 27, 1963, while appellee's claim was before the Board, Dr. James D. Wimpee, a witness for appellant, performed surgery on appellee which Dr. Wimpee described as removing "the pressure that was on the nerves coming out of the back of his leg." This was accomplished "by cutting away the bone and the protruded ruptured bulging disc out of the joint space that had bulged out against this nerve root."

Dr. Wimpee re-examined appellee on June 19, 1964, after which he recommended that appellee undergo further surgery which would entail exploration of the third, fourth and possibly the fifth lumbar, and, a fusion of the third lumbar and fourth lumbar.

The possibility of this additional surgery was mentioned to appellee by Dr. Wimpee prior to the ruling of the Board on appellee's claim but he "did not come right out and specifically recommend 'We are going to do further surgery' until February 1964."

The record before the Board respecting appellee's claim does not disclose any admission of liability on the part of appellant or that any tender of surgery was made to appellee for the operation which was performed or for the second operation which was not performed except as may be disclosed by the following testimony of appellant's attorney:

"Q    As attorney of record for Texas Employers', do you know of any tender through the Industrial Accident Board of a second operation that was made to Mr. Walter Shirey while this case was pending before the Industrial Accident Board of Texas?

A    Only in the sense that an operation was not only tendered but

performed, and the man continued to be under the care of Dr. Wimpee and Dr. Wimpee discussed with him the possibility of a second operation with the full realization that he could perform such an operation and Texas Employers' would pay for it if he did it. As far as the formal written tender of a subsequent operation, there was no more such tender in connection with the second one than there was with the first. This whole case was handled informally, as far as I know."

In the opinion of Dr. Wimpee, the second operation would make appellee "better off than he would be able to accomplish by himself."

It is the contention of appellant that, "The additional surgery is nothing more than a continuation of the surgical procedures already performed, which was brought out in the direct examination of Dr. Wimpee as follows: 'Q.    Now, essentially, when you speak of the decompression operation and fusion operation, are you talking about what frequently amounts to two steps in a two-step procedure? A.    Yes, you are.' "

Dr. Wimpee also testified:

"Q    All right.    Now, Doctor, we are talking about two different operations, are we not, when you say you want to go back in and do an additional decompression and spinal fusion?

A    Yes, in a sense.    Yes, two separate operations in a way.    You might even get in and find the condition, for instance, that would cause you to decide once again to stop just short of spinal fusion.    So, in a sense I think yes, it is two separate operations, surgical procedures."

We quote the following from appellant's brief which follows the above quotation:

"The above reasons take this case out of the line of cases cited above

wherein the benefits of surgery were excluded where no tender had been made before the Industrial Accident Board.

\* \* \* \* \* \*

In the instant case, the technical requirements of Sections 12b and 12e of Article 8306 were no longer in the picture when the Defendant tendered surgery to the Plaintiff, he accepted it, and the surgery was actually performed. All of the consequences of that operation, good and bad, became relevant and material when the surgery was performed. The possibility of repeat surgery to correct conditions that may have been caused by the first operation was one of those consequences."

█ It is our opinion that the court did not err in sustaining appellee's motion and in excluding the proffered testimony tending to show the beneficial effect of a second operation and that appellant's point one presenting these assigned errors should be overruled.

The term "surgery" as used in the Workmen's Compensation Act has been held to embrace "only cutting operations." Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521.

In Texas Employers' Insurance Association v. Vasquez, 371 S.W.2d 119, Amarillo C.C.A., n. w. h., it was held that although the claimant was told on the day the Industrial Accident Board took final action on his claim that another operation (third) was needed and that although the insurer agreed to pay for such operation it did not while the claim was before the Board admit liability, tender surgery, make a demand therefor or request that the Board take action toward surgery, that the insurer could not offer evidence that the claimant had refused surgery or that further surgery might benefit him.

This case and the authorities cited in it are conclusive against the contention of appellant that it had complied with the requirements of Section 12e, Art. 8306, Vernon's Ann.Tex.Civ.St., so as to entitle it to offer evidence of the benefits which might be expected from further surgery.

█ This case, Vasquez, is also authority for denying the contention of appellant that the second operation recommended for appellee was but a continuation of the first operation. The court approved the definition of the duration of an operation as beginning "[W]hen the opening is made into the body and ends(ing) when this opening has been closed."

It is undisputed that the operation performed on appellee was a "cutting operation" and that the incision made in appellee's body had long been closed prior to any suggestion that further surgery was needed. Under these facts, further surgery constituting a cutting operation would require a new opening in appellee's body and a closing of the new opening. This, in our opinion, would be "surgery" within the meaning of the statute above cited.

█ When the Board issued its final order on appellee's claim, it lost jurisdiction of it. Liberty Mutual Insurance Co. v. Wright, 196 S.W.2d 349, Fort Worth C.C.A., writ ref. The subsequent appeal by appellee from such order did not vest the court to which such appeal was taken with jurisdiction or authority to perform duties, such as ordering and supervising operations, which are placed by statute exclusively with the Board. As to these matters the rights of the parties became fixed by what transpired before the Board. Garcia v. Travelers Insurance Co., 365 S.W.2d 916, Tex.Sup.

Since appellant had not complied with the requirements of Sec. 12e, supra, while appellee's claim was before the Board, it cannot claim any benefits thereunder.

Appellant's second point is that the trial court erred in not granting it a new trial because of the misconduct of appellee's counsel.

Appellant contends that appellee, through his counsel, sought to leave the impression with the court and jury that appellant did not deal fairly or honestly with those having claims against it. This was attempted, in part, appellant says, through the examination of its Claims Manager, Mr. Glenn East, regarding practices when a claimant does not recover a lump sum judgment, as disclosed by the following proceedings:

"Q  All right, sir. Now, in the event that a man is paid by the week, as you are contending or as your company is contending in this case should be done, quite often six months or a year later, if that man has some financial problem, that judgment is then reduced to a lump sum for the statutory discount plus an additional discount of five hundred or a thousand dollars; isn't that correct?

MR. FOY: Your Honor, this line of examination is completely irrelevant and incompetent on the issue of manifest hardship or any other issue in the case as to what might happen in the future in the case of a judgment payable over a period of weeks.

MR. WEBB: Your Honor, it is highly relevant to the question of whether it would be a manifest hardship on this man, the very fact that if paid by the week he can subsequently be in a position where in order to get a cash settlement he makes a discount even beyond the statutory four per cent.

MR. FOY: We object to that line of testimony. We further object to the statement Mr. Webb has just made in the presence of the jury. As a matter of law it is an incorrect statement; as a matter of law, it is further a statement which is completely irrelevant and has no proper bearing on any issue to be determined in this case. First of all, we object to the question and ask that it not be answered; secondly, we move that Mr. Webb's statement be stricken from the record and the jury instructed to disregard it.

THE COURT: I will overrule the objection.

MR. FOY: Note our exception.

Q  As a matter of fact, Mr. East, after a judgment becomes final in a case any subsequent settlement of the judgment itself is a matter between the parties and without court supervision, it is not?

A  I have never settled one—

MR. FOY: Excuse me, Mr. East. Don't answer the question. We object to that as completely irrelevant, incompetent, immaterial to any issue in this case. It has no proper place or bearing upon any issue as to what might happen to a judgment after it is rendered by the court. It has a tendency to cause the people who are to decide this case to speculate and conjecture upon the future effects of any judgment.

THE COURT: Overrule the objection.

MR. FOY: Note our exception.

Q  As a matter of fact, Mr. East, in the Cecil Turner case here after judgment a discount above the statutory discount was entered in order to reduce it to a lump sum, was it not?

MR. FOY: If the Court please, we object to that. It amounts to unsworn testimony by counsel, in the first place; in the second place it injects into this case an entirely improper and erroneous and prej-

udicial line of evidence, namely counsel's contention that judgments are generally or can be reduced below their face amounts by settlements. Counsel has a definite purpose in mind, it is a prejudicial purpose; and we object to it and move it be stricken from the record.

MR. WEBB: I will withdraw that question, your Honor.

MR. FOY: Your Honor, we move that it be stricken and that the jury be instructed to disregard it for any purpose.

THE COURT: The jury will disregard the question and not consider it at all.

MR. FOY: Your Honor, because of this persistent line of examination and the persistent injection of prejudicial, erroneous, irrelevant and immaterial information into the record by counsel we move for a mistrial.

THE COURT: Overruled."

■ It is to be noted that there was considerably more "asking" than there was "answering." Of course, the mere asking of some questions can be so harmful as to constitute reversible error. We do not believe this is true here. The issue of "manifest hardship" justifying a lump sum payment instead of weekly payments to appellee was a contested issue. The rule is that in investigating such issue more than ordinary latitude is allowed. Traders & General Ins. Co. v. Ross, 88 S.W.2d 543, Texarkana C.C.A., reversed on other grounds, 131 Tex. 562, 117 S.W.2d 423.

■ It seems to us that if it is common practice for insurers to bargain for excessive discounts when lump sum judgments are not paid that this is relevant to the issue of "manifest hardship" under the rule of liberality above noted. Appellant does

not brief the admissibility of the testimony sought to be introduced, but which was not in fact introduced, and we do not pass directly on such question. We do hold that the mere asking of the questions above noted and the proceedings thereon do not present reversible error under Rule 434, Texas Rules of Civil Procedure. We make this ruling in light of what we have said and also influenced by the fact that appellant does not assail the jury finding of manifest hardship and injury to appellee unless a lump sum award is made.

■ Under this same point appellant complains of the following proceedings:

"Q Now then, Mr. East, as a matter of fact when a doctor, say such as Dr. Landy, comes into court and testifies contrary to your position, one of your jobs is to immediately go and deauthorize him to render any treatment to any other people insured by Texas Employers', isn't it?

A No.

MR. FOY: Your Honor, that is completely argumentative and calls for a conclusion. It is irrelevant, incompetent and immaterial, intended to be prejudicial.

MR. WEBB: It bears on that question of prejudice, bears on the question why it is that a plaintiff has to seek a doctor to come and testify, other than one that they use.

THE COURT: Overruled.

MR. FOY: Note our exception. Your Honor, we move to strike the remarks counsel just made. They also are intended to be prejudicial and inflammatory against this defendant.

THE COURT: Overruled.

MR. FOY: Note our exception.

Q As a matter of fact, you have gone to Dr. Landy, specifically, and told him not to treat anyone else insured by Texas Employers' without your prior written or verbal approval, haven't you?

MR. FOY: Now, your Honor, we object to that question as completely irrelevant, immaterial and incompetent. It is intended to inject prejudice into the case; it is intended to inflame the jury against Texas Employers' Insurance Association; it has no proper bearing on any relevant issue here.

MR. WEBB: It is certainly germane to this question that they have opened as to the medical situation for a man who is a plaintiff.

THE COURT: Overruled."

Prior to the proceedings just related, appellant had queried its witness, Mr. East, regarding Dr. J. M. Estes, appellee's medical witness, as follows:

"EXAMINATION BY MR. FOY:

Q Mr. East, are you acquainted with Dr. J. M. Estes, of Abilene?

A Just when I see him on the stand testifying.

Q State whether or not you have seen him frequently on the stand testifying.

A Since I have been with the company I have seen him a number of times.

Q I will ask you to state whether or not in virtually every case that Webb & Stokes have against your company you find a report from Dr. Estes in the file.

A That's right. He apparently examines all of them.

Q I would like to read you the language from an opinion dated May of 1963 by Dr. Estes in this case:

'OPINION: It is my opinion that Mr. Shirey has been totally disabled since the date of the accident and is totally disabled at this time. It is my further opinion that he will be totally and permanently disabled in relation to doing manual labor.' I will ask you to state whether that language is familiar to you.

MR. WEBB: If it please the Court, that is irrelevant, what is familiar to this man or isn't familiar to him.

MR. FOY: It is relevant impeachment, your Honor, because the next question is going to be—

MR. WEBB: Let his Honor rule on the objection.

THE COURT: Overrule the objection.

MR. WEBB: Note my exception.

Q Is that language or not familiar to you?

A They all read about the same.

Q When you say 'they' what do you mean?

A I am talking about all his reports read about the same with the exception of the man's name."

Other examination of Dr. Estes by counsel for appellant brought out the long and widespread experience of Dr. Estes in trials similar to this case.

There are no points raising the admissibility of any of the evidence introduced or sought to be introduced, referred to above.

We quote, from appellant's brief, a portion of the argument made under this point:

"Counsel's statements in regard to the medical situation under which a

Plaintiff labors was an attempt to bolster up his own medical witnesses. Dr. James Wimpee, testifying for the Defendant, testified that given conservative medical treatment in the future, Plaintiff would be able to work at less remunerative labor. Dr. Landy, testifying for the Plaintiff, would not admit that Plaintiff was totally and permanently disabled. The only medical witness who stated that Plaintiff was totally and permanently disabled was Dr. Jack Estes. On cross-examination of Dr. Estes, it was brought out that he had testified for Plaintiffs all over the State of Texas and was consistently prone to render a 'Total and Permanent' opinion. Therefore, in order to bolster up his medical witnesses, Plaintiff's counsel sought to create to the jury the impression that a plaintiff is forced to resort to medical witnesses who are capable of being discredited."

What appellee was trying, but failed, to prove was an explanation of the frequency of Dr. Estes' appearance as a witness for a plaintiff in these cases by showing that if a doctor does so testify he will be barred from treating patients at the behest of an insurance company, and thus the number of doctors willing to testify for plaintiff was curtailed.

It is our opinion that the unsuccessful attempt to make this proof was not, under the circumstances, reversible error under Rule 434, T.R.C.P. We do not pass on the admissibility of such evidence because no such testimony was admitted.

Appellant also, under this point, complains of the following proceedings during the interrogation of Mr. East:

"Q   As far as the future is concerned, we just wound up a lawsuit on another man's future medical, just a day or two ago, didn't we?

MR. FOY: Now, your Honor, this again is an attempt to inject prejudice into this case. Mr.

Webb has just offered a completely irrelevant and immaterial statement on his own part; it is inflammatory, it is prejudicial to our rights. We object to it, and we do not only object to it, we move that the question itself be stricken from the record and the jury instructed to disregard it.

MR. WEBB: Your Honor, when he testifies that he is going to magnanimously pay this man's future medical, we have a right to challenge it by showing the experience we have had with him before in similar situations and that is what that question bears on.

MR. FOY: Now, we object further to that remark of counsel and we move that it be stricken from the record.

THE COURT: Sustain the objection. The jury will disregard the question and remark objected to.

MR. FOY: Now, your Honor, in view of this whole situation, in view of counsel's continued attempt to insinuate that Texas Employers' is doing something nasty and underhanded and subversive toward the right of people to obtain medical treatment we move for a mistrial.

THE COURT: Overruled."

Just prior to these proceedings, appellant had procured the following testimony from Mr. East:

"Q   I will ask you to state whether you have, as and when you were notified that it was needed, furnished medical treatment to the plaintiff in this case?

A   We sure have.

Q   I will ask you to state whether you have paid all of the bills ren-

dered to you for medical treatment and hospitalization of the plaintiff in this case?

A As far as I know they have all been paid.

Q And are you ready and willing and able to continue to do that in the future?

A That's right.

Q Have you attempted in any way to prevent this plaintiff from obtaining any medical treatment whatsoever?

A I have not."

Appellee, of course, was attempting to show that collection of future medical bills was sometimes fraught with controversy. We hold that appellant having introduced this subject of future medical bills, reversible error is not shown under Rule 434, T.R.C.P. by the above proceedings.

Point two is overruled.

Appellant's third point is that the following jury finding is evidentiary only and will not support a judgment:

"SPECIAL ISSUE NO. 11:

Do you find from a preponderance of the evidence that the payment of compensation, if any, to Plaintiff, WALTER LEE SHIREY, in weekly installments instead of a lump sum will result in manifest hardship and injury to Plaintiff?

Answer: 'Yes' or 'No.'

ANSWER: yes"

Section 15 of Article 8306, Vernon's Ann.Tex.Civ.St., reads, in part, as follows:

"* * * Where in the judgment of the Board manifest hardship and injury would otherwise result, the Board may compel the association to redeem the liability by payment of the award of the Board in a lump-sum, * * *."

Prior to 1959 the word "injury" as found in the present statute read "injustice."

Appellant contends that the Legislature did not intend to substitute the word "injury" for "injustice" and that this is borne out by the emergency clause to the 1959 Amendment which, in proper context, used the word "injustice" rather than the word "injury," and that the Court, therefore, erred in using the word "injury" in the above special issue.

We overrule this point. The intention of the Legislature is to be derived from the language used by it and not by what language we may believe it intended to use. An emergency clause in a statute may not be invoked to create an ambiguity in a statute or to control its plain meaning or purpose. Statutes, 53 Tex.Jur., Sec. 170, p. 249.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.