## DR. S. T. HUMPHREYS V. RAYMOND ROBERSON.

No. 6395. Decided June 12, 1935.
Rehearing overruled July 10, 1935.
(83 S. W., 2d Series, 311.)

*Bruce & Dawson,* of Wichita Falls, for plaintiff in error.

The defendant in error, Roberson, offered only himself as a witness and no testimony was introduced to how careful other physicians were when practicing under similar conditions, and the jury was left to determine the matter of negligence of this physician in treating this patient purely as a matter of ordinary care. Under these facts a motion for an instructed verdict was timely made and overruled and this action was sustained by the Court of Civil Appeals. This was an error of law. Floyd v. Michie, 11 S. W. (2d) 657; McCraw v. Kerr, 128 Pac., 870; Turner v. Stoker, 289 S. W., 190; Sweeney v. Erving, 35 App. Cas., 57, D. C.; 43 L. R. A. (N. S.), 734.

*Taylor, Muse & Taylor,* of Wichita Falls, for defendant in error.

Counsel, in his argument, has a right to indulge in reasonable deductions and inferences from any evidence that has been introduced. Therefore the argument of attorney for plaintiff, Roberson, was not reversible error. Moore v. Rogers, 84 Texas, 1; Texas Tel. & Tel Co. v. Seiders, 29 S. W., 258; Beaumont Trac. Co. v. Dillworth, 94 S. W., 352; Russell v. Martin, 121 Texas, 488, 49 S. W. (2d) 699.

There was no error in the court overruling defendant's motion for instructed verdict. It is elementary that a disputed issue of fact raised by the pleadings should be submitted to a jury. Fort Worth & D. C. Co. v. Morrow, 235 S. W., 664; Miles v. Harris, 194 S. W., 839.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This was a suit brought by defendant in error, Raymond Roberson, against plaintiff in error, Dr. S. T. Humphreys, for damages caused by negligent injury to his eye while being treated by plaintiff in error for trachoma, or graunlated eyelids. The parties will be designated as in the trial court. Judgment was in favor of plaintiff for $3,000.00, and this was affirmed by the Court of Civil Appeals. A full statement as to the charge of the court and findings of the jury is found in the opinion of that court. 52 S. W. (2d) 933.

There are two main contentions presented by defendant in petition for writ of error. One of these relates to the charge of the court in defining negligence. The charge in that respect was as follows:

" 'Negligence' is the failure to use ordinary care, and ordinary care is such care as a person of ordinary prudence would use under the same or similar circumstances.

" 'Negligence' as applied to the conduct of a physician is the failure to use ordinary care, and as regards a doctor in the treatment of his patient it is a failure to exercise or use such skill and care as is generally possessed or used by persons engaged in such profession in such vicinity."

1 It is apparent that under ordinary circumstances this charge would be erroneous. We have concluded, however, that in this particular instance it was not. The allegations of the negligence constituting the basis of plaintiff's suit were as follows:

"That the defendant, while he was treating this plaintiff, on the second trip and for the second time, took an electrical appliance strongly charged with electricity and after having turned up his upper eyelid with his finger, he carelessly, recklessly and negligently applied said electrical appliance to the plaintiff's upper eyelid on the inside and stated that he was burning the granulations off of his eyelid. That he likewise with his fingers turned down the lower eyelid of the plaintiff and applied said electrical appliance to the inside of his lower eyelid. That in applying said electrical appliance and said electricity to the eyelid of the plaintiff that he carelessly, recklessly and negligently permitted said electrical appliance to come in contact with the eyeball of the plaintiff and burned and seared the eyeball and destroyed the sight thereof. That the application of said electricity and said electrical appliance as herebefore alleged was careless, negligent and reckless upon the part of the defendant. And that the application of said electricity and said electrical appliance as hereinbefore alleged was the direct and proximate cause of the injuries and dam-

ages hereinbefore alleged and that the defendant was not only guilty of negligence, carelessness and recklessness, in so applying said electrical appliance to the eyelids of the plaintiff, but was guilty of gross negligence, carelessness and recklessness, in so applying said electricity and said electrical appliances to the plaintiff's eyelids and in burning his eyeball as hereinbefore alleged. That it was the plaintiff's left eye that suffered the injuries and damages as hereinbefore alleged and that by reason of the facts hereinbefore alleged the plaintiff is and was damaged as hereinafter alleged."

It will be observed that these allegations constitute a charge of negligence in two particulars: (a) Negligence in the manner of treating the eye and applying the electrical apparatus to the lids of the eye; and, (b) negligence in allowing the electrical appliance to come in contact with the eyeball. We may say in passing that if the first ground of negligence alone had been submitted, the charge would have undoubtedly been erroneous and defendant's propositions concerning the necessity for expert testimony to show negligence would have probably been sound.

However, it was the second ground of negligence which was submitted to the jury by the trial court. The three special issues submitting this phase of the case were as follows:

"Special Issue No. 1: Did Dr. Humphreys permit the electrical appliance to come in contact with the left eyeball of the plaintiff? Answer: Yes.

"2. Was such touching of said eyeball, if it was touched, negligence as that term is above defined to you? Answer: Yes.

"3. Was such negligence, if any, the proximate cause, as that term is above defined, of any injury to plaintiff's eyeball and eyesight? Answer: Yes."

Dr. Humphreys testified fully and in detail as to his method of treating plaintiff's eye. According to his own statement it was done by the use of an electrode connected with a galvanic current, or what is known as the D C current. By means of this electrode, through which was passed one milliampere of electricity, an application of copper was made to the granules on the eyelids. This process of treatment is known as ionization. In connection with this method of treating granulated eyelids, Dr. Humphreys testified as follows:

"In the use of electricity for the purpose of treating granular eyelids the electricity is not supposed to be applied to the eyeball. It is certainly not proper treatment to apply it to the eyeball because there are no granules on the eyeballs; it would

be just as well to put it in his nose. It is not the proper thing to do.

"If electricity was applied to this boy's eyeball in dangerous doses, then it certainly was not the proper attention and treatment from me. If there was enough electricity given to put the eye out if applied to the eyeball, it was surely not proper treatment to apply it to the eyeball. It is a serious mistake and grave carelessness and recklessness if it is done."

Under this state of facts, it is obvious that the sole question was whether or not the defendant allowed the electrode to come in contact with plaintiff's eyeball. The jury has answered that he did, and according to his own admission such act was negligence.

As the case must be reversed on another point, it is not necessary to discuss this question further. No doubt the case will be submitted in a different manner in the event of another trial.

2 In the course of his closing argument counsel for plaintiff, among other things, stated to the jury as follows:

"Gentlemen of the jury, the proof shows in this case that Roberson is only a poor laboring boy. The proof shows that he has not been able to pay his doctor bill, except $2.00 or $3.00 to Dr. Lawson. That is not any sign he can't suffer or that he should not have pay for his left eye."

Although objection was made by counsel for defendant, the court failed to instruct the jury not to consider this argument.

It has frequently been held that this character of argument is improper. The Oriental v. Barclay, 16 Texas Civ. App., 193, 41 S. W., 117, sub. 13 of syllabi; Western Indemnity Co. v. MacKechnie, 214 S. W., 457, sub. 9 of syllabi; Hewitt v. Buchanan, 4 S. W. (2d) 169, sub. 27 of syllabi; Dallas Consolidated Ry. Co. v. Black, 89 S. W., 1087, sub. 1 of syllabi; Crow v. Monroe, 273 S. W., 886.

Just prior to making the statement above quoted, counsel had referred to Dr. Stripling, an expert witness for the defendant, as "the $100.00 a day witness." Whatever may have been the real intention of counsel in making the argument complained of, there is no escape from the conclusion that it furnished a most convenient method of emphasizing before the jury the poverty of plaintiff as contrasted with the more fortunate circumstances of defendant, who was able to secure the attendance of Dr. Stripling at a charge of $100.00 per day.

The rule enforced by this court in case of improper argument to the jury is that it must clearly appear that no injury

could have resulted from the argument, or the cause will be reversed. In this case the question of whether or not defendant while treating plaintiff's eye allowed the electrode to touch the ball of the eye, and whether or not this caused the injury complained of, was closely contested. We may safely say that practically the great weight of testimony was against plaintiff's contention in this regard. It is obvious to us therefore that in all probability this argument influenced the jury.

3  As indicated above, this case as pleaded was not one based entirely upon negligence and carelessness on the part of Dr. Humphreys in a matter involving professional skill and ability, hence the ordinary rules with reference to expert testimony and negligence in case of malpractice on the part of a physician did not exclusively govern. See Coffey v. Tiffany, 192 Mo. App., 455, 182 S. W., 495. Therefore, we do not think that defendant was entitled to an instructed verdict.

The judgments of the trial court and of the Court of Civil Appeals are set aside and the case is reversed and remanded.

Opinion adopted by Supreme Court June 12, 1935.

Rehearing overruled July 10, 1935.