**PORTER et al. v. PURYEAR.**

No. 6289.

Court of Civil Appeals of Texas.    Amarillo.
April 6, 1953.

Rehearing Denied May 11, 1953.

Klett, Bean & Evans and Trout & Jones, Lubbock, Stephen L. Mayo and J. Edwin Fleming, Dallas, for appellants.

Bob Huff and J. H. Splawn, Jr., Lubbock, for appellee.

MARTIN, Justice.

This is a malpractice suit by appellee, Monte Puryear, plaintiff in the trial court, against appellants, Dr. G. G. Porter and Dr. J. A. Finer, and also against T. W. Baker, defendants below, in which appellee sought damages for the improper administration of a spinal anesthetic whereby he was completely paralyzed below the level of the sixth dorsal vertebra. Appellee pleaded, "J. A. Finer and T. W. Baker, improperly administered the spinal anesthetic to this plaintiff in that the hypodermic needle, approximately four inches in length, was inserted or pushed into plaintiff's spine somewhere between the 1st lumbar and sixth dorsal vertebra, thereby causing a rupture and contusion of the spinal cord, resulting in total paralysis of plaintiff's lower extremities."

The jury in the cause found that T. W. Baker injected "a spinal needle into the plaintiff's spinal cord or canal at a location above the level of the 1st lumbar vertebra * * *." The jury further found that such act was negligence and the proximate cause of the injury sustained by plaintiff, Monte Puryear. Upon these findings, and other pertinent issues, the trial court rendered judgment against appellants, G. G. Porter and J. A. Finer, in the sum of $134,860. Appellants perfected an appeal and rely on seven points of error for reversal of the judgment of the trial court.

Appellants' point one asserts that "the finding of the jury to Special Issue Number One to the effect that Baker injected a needle in the plaintiff's spinal Cord at a location above the level of the 1st lumbar vertebra is without any evidence to support it, at least contrary to the overwhelming weight of the evidence." Appellants sub-divide this point of error into two issues. "(1) There is no evidence that Baker injected the needle in the spine at a location *above the level* of the 1st lumbar. (2) There is no evidence that Baker injected the needle in the spinal *cord*."

The evidence on the above two issues has been examined under the respective rules applicable to appellants' assignment that there is no evidence to support the jury verdict and also under their assignment that the evidence is insufficient to support the jury verdict. In re King's Estate (King v. King), Tex.Sup., 244 S.W.2d 660. With reference to locating the point of injection of the needle, Dr. W. A. V. Cash from Abilene, Texas testified that

the effects of the nembutal and morphine as given to appellee to prepare him for the operation would only last an hour to an hour and one half and would not cause unconsciousness at any time—this evidence being in answer to the issue of whether Puryear was conscious and able to place the point of injection. An examination of the Doctor's qualifications as an expert leads to the view that he was qualified to testify as to these two elements. Appellee testified as to his ability to fix the place of penetration of the needle, "A. I don't think. I can show them just about where." He further testified that the injections "were given about the level of the nipples" and "within an inch or an inch and a half of your backbone if you draw a straight line from around there to your nipples." The record shows that such location was above the level of the 1st lumbar vertebra. Dr. J. D. Barry, from San Angelo, Texas testified that the level of the paralysis corresponded with the point of injection as made by the needle and as pointed out by appellee Puryear. Appellant Porter testified that after the cord was severed or ruptured "there would be paralysis below that." Dr. R. H. Tull from Abilene, Texas testified that from an examination of the appellee, regardless of any information given him by appellee, that as a medical expert he could arrive at the level of the puncture without appellee telling him of the location. Dr. Richard M. Mayer of Lubbock, Texas testified that heavy nupercaine, the anesthetic administered in this case, goes down and that to raise the area of paralysis resulting from the same, the patient would have to be tilted. The appellee's direct testimony as to the place of the puncture is corroborated by the fact of his paralysis coupled with all the medical testimony, by both osteopaths and MDs, that paralysis as sustained by appellee could not be caused by an injection in the area of the cauda equina or lower back. The jury verdict as to this element of proof is supported by the evidence and such verdict is not contrary to the overwhelming weight of the evidence establishing that the spinal puncture was made in appellee's back at a level above the 1st lumbar vertebra.

The evidence as to the needle being inserted in the spinal cord is too lengthy to quote in detail here. A few pertinent excerpts will be taken from the 1000 pages of testimony. Dr. Barry testified, "He had a perforation of the cord with subsequent hemorrhage." He further testified as to whether or not the making of a spinal puncture at the 8th or 9th dorsal vertebrae would pierce the cord. "A. I don't see how anybody could make a puncture without hitting it at that level." Other medical testimony in the cause with reference to the puncture causing a hemorrhage in the spinal area and resulting destruction of the spinal cord corroborates Barry's testimony. However, when the testimony as to the puncture of the cord is carefully separated from the testimony as to hemorrhages caused in the spinal area and resultant damage to the cord therefrom, the principal evidence to support the finding of actual penetration of the cord is the testimony of Dr. Barry as hereinabove quoted. But, the testimony in the record is sufficient and will support the jury finding that the spinal needle was injected into the spinal cord or canal of the plaintiff at a location above the level of the 1st lumbar vertebra. Appellants' Point One is accordingly overruled.

Appellants' Point Two alleges, "The finding of the jury in answer to Special Issue No. Two to the effect that the alleged act of Baker in injecting a spinal needle in plaintiff's spinal cord or canal at a location above the level of the 1st lumbar vertebra was Negligence is without any evidence to support it, at any rate contrary to the overwhelming weight of the evidence." The jury found that the needle was injected above the level of the 1st lumbar vertebra. The medical testimony introduced through experts from both the medical and osteopathic school of practice established that the making of a spinal block at a location above the level of the 1st lumbar vertebra was an unheard of medical proposition. Under such finding and evidence the overwhelming weight and preponderance of the evidence supports

the jury finding that the injecting of a spinal needle above the level of the 1st lumbar vertebra was negligence. Appellants' Point Two is accordingly overruled.

It should be observed as to the issues discussed above that the evidence of both schools of practice was considered under the ruling detailed under Appellants' Point Three. Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311, Syl. 3.

■■ With the makings of the rulings hereinabove outlined under appellants' points one and two, the most difficult phase of the case is brought in issue by appellants' point three as follows: "The finding of the jury that the alleged negligent act of Baker in injecting a needle in plaintiff's spinal cord was the Proximate Cause of plaintiff's alleged personal injuries is without any evidence to support it, at any rate contrary to the overwhelming weight of the evidence." All parties should concede that both negligence and proximate cause must be established by expert medical testimony in a malpractice case. Further, it must be conceded that Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782, 13 A.L.R.2d 1 is controlling as to the following issues: "It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) *that it was a proximate cause of the patient's injuries."* (Emphasis added.)

■ Baker, who attempted to administer the spinal block, was not a member of either the Osteopathic School of Practice or the Medical School of Practice. Further, the record reveals that both such schools of practice use the same method of administering a spinal anesthetic. Therefore, in so far as the mere injection of the needle, physicians of either school of medicine may testify in regard to the specific acts of Baker in attempting to administer the spinal block. Humphreys v. Roberson, supra, syl. 3. But, after Baker injected the spinal needle, the proximate results flowing from this act can only be proven by medical diagnosis and medical testimony under the issue of proximate cause. The issue as to the proximate cause of appellee's paralysis is strictly within the rule prescribed by the Supreme Court in Bowles v. Bourdon, supra, and such proximate cause can only be proved by expert witnesses of the same school of practice as the defendants.

■ There is no testimony by Osteopathic Physicians that the paralysis of the appellee was proximately caused by the injection of the spinal needle in the spinal cord of the appellee, or otherwise. The evidence is not only insufficient to support proximate cause in this case, but there is no evidence in the record from any osteopathic physician establishing proximate cause. Appellants' point three is accordingly sustained. Bowles v. Bourdon, supra; Barker v. Heaney, Tex.Civ.App., 82 S.W.2d 417; Urrutia v. Patino, Tex.Civ. App., 10 S.W.2d 582; Simms v. Gafney, Tex.Civ.App., 227 S.W.2d 848; Kaster v. Woodson, Tex.Civ.App., 123 S.W.2d 981; Ayers v. Parry, 3 Cir., 192 F.2d 181.

■ The above ruling, under the authorities cited, is sufficient to clarify the issue under appellants' point three, but in the light of a re-trial of the cause the record has been re-examined on the issue of proximate cause. An examination of all the medical testimony, from both the osteopathic and the medical school of practice, reveals there is no evidence to support the jury finding of proximate cause. Special Issue One as submitted in the trial court confines the jury in such finding to the sole issue of whether or not the spinal needle was injected into the spinal cord or canal of the plaintiff Puryear. Special Issue Three as to proximate cause submits the sole issue as to whether or not the injection of the spinal needle into the spinal cord or canal was the proximate cause of the personal injury sustained by appellee.

On the issue of whether there is evidence to support the jury finding that the injection of "a spinal needle into the spinal cord or canal" of plaintiff proximately caused his paralysis, the evidence given

by the osteopathic physicians will not be detailed here as all such testimony supports the appellants' position in the cause and has been ruled upon hereinabove.

The testimony of appellee's experts from the school of medical practice will be detailed hereinafter as such testimony also reveals that there is no evidence to support the jury finding of proximate cause. The testimony of Dr. Barry, brought from San Angelo by appellee, reveals that his entire theory as to proximate cause is as follows: "A. Oh, I don't think the punctures themselves can do it, it's the hemorrhages that does it." He further testified that if a person injecting the needle hit the substance of the cord that this would not cause immediate paralysis. "Q. How long would it take you to get a paralysis? A. Well, it would take a matter of hours. Q. About how many hours would it take, Doctor? A. It depends on how much hemorrhage there was." A summary of Dr. Barry's testimony is that a puncture of the spinal cord would not proximately cause paralysis, but that paralysis would result only where a hemorrhage of the blood vessels occurred and the cord itself was transfixed or cut off by such hemorrhage.

Dr. A. Lee Hewitt of Lubbock, testified only to the following fact, "if a needle were to enter the spinal cord, and the nerve elements destroyed by *injection of a solution* through the needle, *I imagine* complete paralysis could be produced." (Emphasis added.) Nowhere does Dr. Hewitt testify that the mere injection of a spinal needle into the spinal cord would proximately cause paralysis such as that suffered by appellee.

Dr. R. H. Tull of Abilene, Texas, appellee's most cooperative witness in the cause, testified "If a hemorrhage were severe enough, it would give you a transverse myelitis; it would give you enough hemorrhage there to give enough pressure to cut the cord off entirely. Q. What would that do to your body below that level? A. Paralyze it below that level." This testimony reveals that Tull's theory is that appellee's paralysis was proximately caused solely by a blood hemorrhage of

sufficient severity to cut off the cord entirely. His testimony is further revealing in the following statements. "A. Well, the puncture itself, just by itself, if it didn't rupture a blood vessel, it might not give him—unless it was a puncture that's rough and jiggled about, it wouldn't give him immediate paralysis of the whole cord —it might not. Q. Well, do you think it could possibly cause a—A. According to the hemorrhage. Q. —complete transverse myelitis? A. Not without some hemorrhage there, I don't believe it would have. Q. Well, what I am getting at Doctor, is that the needle itself does not cause transverse myelitis; in your opinion you'd have to have a hemorrhage before, which would cause the paralysis, is that right? A. Something that'd make pressure there; that's right. Q. And the needle itself wouldn't make the pressure, would it? A. Not if the needle just hit that area, it wouldn't. * * * A. Unless you hit a blood vessel and got some hemorrhage there I don't believe you'd get immediate paralysis." Doctor Tull's final summation is as follows: "Q. Doctor, have you ever seen a patient whose spinal cord was *ruptured* by a spinal needle? (Emphasis added.) A. I don't believe I ever have."

Dr. O'Laughlin of Lubbock, Texas summed up the medical issue as follows: "A. On the basis of my examination, it is my opinion that the patient has a transverse myelitis at the level of about D-8, which is total and complete. At the time of the original examination he also had a chemical meningitis, which has now cleared up." Dr. O'Laughlin further testified that bloody spinal fluid in itself will not cause paralysis. It is noteworthy that Dr. O'Laughlin had treated the appellee as a patient in the hospital and that he had not merely examined him shortly before the filing of this cause of action.

Dr. J. T. Krueger of Lubbock, Texas was not a witness for appellee although appellee did take his deposition. A part of the cross-examination of such witness was introduced by the appellants. Dr. Krueger testified that he had administered approximately 12,000 spinal blocks, and had completed approximately 40,000 surgical pro-

cedures. It would appear that this experience qualified Dr. Krueger to testify on the issues in the cause and particularly so as he had been engaged in the actual observation of the appellee as his physician. Krueger's pertinent testimony is as follows: "Q. Do you testify that Dr. Finer or Mr. Baker ruptured or damaged the spinal cord with the spinal needle? A. No, I do not. Q. Isn't it true that in your opinion, based upon your extensive practice, it is improbable that a spinal puncture could have been made in such a way as to penetrate or damage the spinal cord? A. I do not think that a needle alone, if it were possible to pierce the cord, could possibly cause a complete paralysis such as Monte Puryear has. Q. Isn't it true that in all your practicing experience, you never had and never knew of a case where the spinal cord was penetrated or damaged by the spinal needle? A. I may know of cases where there was some minute damage, but I never had a case in my own experience in which there was a paralysis caused from a needle, in fact, I don't believe that a needle alone could cause enough damage to the cord to cause a paralysis such as Monte Puryear has." Dr. Krueger further summarized the issue of paralysis by needle in the following testimony. "Q. If you purportedly attempted to paralyze me by making a spinal puncture somewhere in the dorsal or thoracic vertebrae, do you think you could do so? A. I do not believe I could with one puncture. Of course, if you were to make many stabs with a spinal needle, it might be possible to so injure the cord as to cause a paralysis, but one would certainly have to use many punctures with the needle. Q. Would it be difficult to paralyze me in such a procedure? A. Yes. Q. If, in such attempt to injure me, you were successful in piercing the spinal cord with the needle, state whether or not it would be possible that such piercing of the cord in itself would produce complete paralysis from my waist down? A. I think not."

The evidence given by Dr. W. A. V. Cash from Abilene, Texas may be briefly summarized by the following testimony: "It's my opinion that it was caused by traumatic entry to the cord, followed by hemorrhage into the cord, which caused the destruction of the cord at that level * * *." "A. If massive hemorrhage in the dorsal area, in my opinion would cause or could cause a permanent paralysis. Q. You have never seen such a case, have you, doctor? A. No, I haven't, I have never seen a— and that's except from—from direct violence, a blow over the dorsal area. Q. That is where the cord itself is crushed, isn't it? A. Yes, or damaged." Dr. Cash's testimony further reveals, "Q. I want to understand you now as to whether or not the hemorrhage you are speaking of that caused the destruction of the cord occurs outside the cord or inside the cord. A. I don't think it makes a bit of difference where it occurs as long as the hemorrhage is massive enough. That is the only way I can answer it."

A summary of all the medical testimony in the record, from members of the osteopathic school as well as from members of the medical school of practice reveals without contradiction that the injection of "a spinal needle into the spinal cord or canal" will not proximately cause paralysis such as sustained by the appellee in this cause.

■ An examination of the pleadings in the cause reveals there is no pleading that the injection of a spinal needle in the plaintiff's spinal cord or canal was the proximate cause of the personal injury to appellee. Appellee's second amended petition as to the specific allegations of acts of malpractice and unskillfulness which are asserted to be the proximate cause of the personal injuries sustained by appellee reveals only the following allegation as to the insertion of the needle and proximate injuries arising therefrom, "(8) That at the time and on the occasion in question, defendants, J. A. Finer and T. W. Baker, improperly administered the spinal anesthetic to the plaintiff in that the hypodermic needle approximately four inches in length was inserted or pushed into plaintiff's *spine* somewhere between the 1st lumbar and 6th dorsal vertebra, *thereby causing a rupture and contusion of the spinal cord* resulting

in total paralysis of plaintiff's lower extremities." (Emphasis added.)

In the light of the above pleading, it is observed that Dr. Hewitt's view of the proximate cause of appellee's paralysis was that the nerve elements could be destroyed by injection of a solution. But, other than this testimony of Dr. Hewitt, an analysis of the medical testimony presented in the case leads to the inescapable conclusion that the proof in the cause only support the issue that the spinal cord of appellee was ruptured, as pleaded by appellee, and that such rupture of the spinal cord, (transverse myelitis), was the proximate cause of appellee's paralysis. All such medical testimony not only wholly supports the theory and issue of a hemorrhage of the blood vessels and destruction of the cord thereby and resultant paralysis but such medical testimony also directly refutes the issue that the injection of the needle into the spinal cord or canal would proximately cause the paralysis of the appellee. In this state of the record, it certainly cannot be said, contrary to all the medical testimony, that the injection of the spinal needle into the spinal cord of the appellee proximately caused his paralysis—at least there. is no evidence to support such an issue or at best such a finding is against the overwhelming weight and preponderance of the evidence. The jury and the court are limited to testimony of only medical experts from the osteopathic school of practice, as pointed out hereinabove, but under all medical testimony introduced in the cause, both medical and osteopathic, appellants' point three must be sustained as ruled hereinabove.

The consistency of the expert evidence is particularly noteworthy from a careful examination of the medical testimony presented by the parties through the expert witnesses. Dr. Krueger nowhere testifies that a severe hemorrhage of the blood vessels and a consequent destruction of the spinal cord, transverse myelitis, would not cause complete paralysis of appellee's lower extremities. On the other hand, Drs. Barry, Tull and Cash, while testifying that a severe rupture of the blood vessels and resulting hemorrhage of the same would cut off and destroy the spinal cord, either abstained from testifying that the injection of a spinal needle into the spinal cord would cause paralysis of the lower extremities or else testified directly that the injection of the needle into the cord would not cause paralysis.

■ Appellants' points Four A, Four B, and Five will be discussed together. Four A raises the issue that there is no evidence that Baker was acting within the scope of his employment for Dr. Porter. Point Four B raises the issue that since Baker was acting under the "direction and control" of Dr. Finer that such finding brought Baker within the borrowed servant rule and thus Porter was not liable for his acts and the court erred in disregarding this issue and finding by the jury. Point Five asserts there is no evidence to support the jury finding that Finer and Porter were engaged in a joint venture or that such finding was against the overwhelming weight of the evidence.

The evidence will not be quoted at length on these issues. Appellee testified that throughout the entire proceeding Dr. Porter was his physician. Appellant Porter testified that he received a percentage of all fees earned by Finer and that he, Porter, furnished all hospital facilities and equipment. In fact, all medical facilities were furnished by Porter other than the professional services of Finer and Finer's own personal instruments. The record is also undisputed that at the time Baker actually performed his duties as anesthetist he was being paid by Porter for the specific duties so performed. It is likewise an undisputed fact that after the difficulty arose as to appellee's condition, both Porter and Finer were jointly concerned as to the unfortunate outcome of the case and both Porter and Finer went to Dr. Krueger and discussed the history and surroundings of the occurrence. Under the record, it is apparent that Porter and Finer were engaged in a joint venture as defined by the trial court and further that Baker in administering the anesthetic was performing a duty for which he was employed and paid by Dr. Porter. Such finding renders immaterial the borrowed

servant rule. Appellants' points Four A, Four B and Five are overruled.

Appellants' point six raises the issue that there is no competent evidence from any doctor of the same school of practice that the diagnosis or treatment by Dr. Finer and Dr. Porter was such as to constitute negligence, or that such negligence, if any, was the proximate cause of the plaintiff's injury. As hereinabove pointed out, since Baker was not a member of the school of Osteopathic practice or of the school of medical practice, physicians of either of such schools of medicine were qualified to testify as to the facts concerning the actual injection of the needle by Baker. Humphreys v. Roberson, supra, syl. 3. But, as hereinabove pointed out, once the facts in issue as to the making of the puncture by Baker was clarified by the testimony, the proximate results flowing from such act are indisputably issues solely within the purview of medical diagnosis and in so far as testimony as to proximate cause is involved here, appellants' point six is sustained under the rule in Bowles v. Bourdon, supra. On this issue it is again noteworthy that in a final summation of proximate cause, that the testimony of all medical experts established that the mere injection of the spinal needle into the spinal cord would not cause paralysis such as sustained by appellee. Such testimony renders immaterial all issues as to separate schools of medical practice. This observation is not meant to overrule the express rule hereinabove followed that in determining the results proximately flowing from Baker's act, proximate cause, the testimony should be confined to physicians of the same school of practice as appellants in establishing liability in this cause.

Appellants' point seven is concerned with the court's overruling certain of defendants' assignments of error with reference to the principle that in establishing a cause of action against his doctor for alleged malpractice, either in diagnosis or recognized treatment, a patient must establish both negligence and proximate cause by a doctor of the same school of practice as the defendant. This issue has been adequately discussed and the same ruled upon hereinabove.

There has been an attempt to bring considerable pressure on the court by expressions to the effect that the appellate court should not usurp the duties of the jury in the trial court and that, "It would be disastrous to the public, as well as the bar, for this Honorable Court to reverse this judgment" of the trial court. On appeal, the record is examined in detail and the same weighed under the law as applicable thereto in the judgment of the court—final opinion in any cause will rest solely on those considerations.

In view of another trial of the cause, it should be noted that the trial court properly sought to withdraw from the jury certain statements made by counsel for appellee on the trial of the cause. In seeking to show interest in the witness, Dr. Mayer, an osteopathic physician of the Porter Clinic, appellee's counsel made the following statement, "Yes, sir, and you gently placed a needle in Hattie Tucker and killed her and there is a lawsuit pending in this court this very minute wherein I am the attorney representing the plaintiff and you are being sued for malpractice." Following this a further statement was made, "Now, Doctor, you are defendant in a suit of Hattie Tucker's pending in this court wherein I represent her little two children, is that right." These statements were so prejudicial and inflammatory that the effect thereof could not be cured by the instruction of the trial court to the jury to disregard the same and such statements would result in a reversal of the cause if point of error were presented here. Any effort to show interest on the part of Mayer should be limited, as instructed by the trial court, to proof that Mayer was a defendant in a lawsuit in which appellee's counsel was representing plaintiff.

Under the rulings hereinabove made, the judgment of the trial court is reversed and the cause is remanded for a new trial.