Clyde W. Woody, John J. Browne, Houston, for appellant.

Dan Walton, Dist. Atty., Samuel H. Robertson, Jr., J. R. Musslewhite, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is under Art. 527, Vernon's Ann.P.C.; the punishment, thirty days in jail and a fine of $500.

The information alleges that the appellant did "unlawfully engage in the showing of lewd and lascivious motion pictures entitled 'Bobby Sox' ".

A police officer testified that the appellant was in the "change booth" of an arcade containing various kinds of coin operated machines; that he received some "change" from appellant and then put a quarter into one of the machines and it lighted up and a film began to roll and he watched it; and that it took six quarters to see all of the film covering a period of about fifteen minutes.

Art. 527, supra, makes it an offense to engage in the showing and exhibiting of lewd and lascivious motion pictures and it also makes it an offense to show such pictures in arcade machines.

**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Hollie DERRETT, Appellee.**

No. 6364.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 6, 1960.

Rehearing Denied Nov. 2, 1960.

Garrison, Renfrow, Seleskey, Cornelius & Rogers, Lufkin, for appellant.

Fulmer, Fairchild & Badders, Nacogdoches, for appellee.

McNEILL, Justice.

Having fallen from a scaffold in the afternoon of May 10, 1957, while employed as a carpenter by the East Texas Development Company on a construction job in the City of Nacogdoches severely injuring himself, appellee claimed total and permanent disability under our Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., against appellant, insurance carrier. The case was tried by the court, sitting with a jury, and on its verdict judgment was rendered for total and permanent disability.

Appellant presents its case here upon 20 points. The first two are that the jury's finding of total incapacity is against the overwhelming weight and preponderance of the evidence and the evidence is insufficient, as a matter of law, to support the jury's findings. We have carefully read the statement of facts, and the verdict of the jury is not subject to the complaints made. This we think is correct as we point out hereinafter: first, factually, and then as to the legal question raised.

Appellee at the time of trial was 42 years old and had an eighth grade education. For some ten years prior thereto he had been in the building contracting business and when he was not engaged as a contractor he would work as a carpenter for some other employer. He had worked six days for his employer when the accident

involved took place. He and a fellow-employee were on a scaffold five feet from the ground working on the wall of a building. The scaffold broke and he fell to the ground and his fellow-employee fell with him and either fell directly upon him or bounced from the upper part of the scaffold over onto him so that his knees and hands landed on appellee's stomach. As appellee fell his head, neck and shoulders struck a concrete wall which stood about five feet from the wall of the building upon which they were working. No part of his body struck the top of the concrete wall but as he fell his back was toward the concrete wall and when he came to rest he was pushed down in the angle of space between the concrete wall and the ground. He was taken immediately to Dr. Chas. W. Coussons in the town who, after examining him, took him to the local hospital where X-rays were made. This having been done, the doctor released him to go to his home in Alto. When he reached Alto he went to see Dr. Rossman, a general practitioner, who examined him and put him in a hospital in the neighboring town of Rusk where he spent five or six days. X-rays were made of him at that place. While appellee was in the hospital, Dr. Rossman decided that the case was one requiring a specialist and so he sent appellee to Dr. Leland Wilcox, an orthopedic physician in Tyler. Dr. Wilcox examined appellee, made further X-rays and, since appellee complained of continuous pain in his neck and shoulders, recommended that appellee apply traction to his neck at intervals and also wear a special collar.

Appellee returned to his home and obtained traction apparatus and collar and used them for some while but did not seem to get any particular relief. Somewhat later after employing attorneys he was sent by them to Dr. E. P. McKinney of Nacogdoches, who examined and treated appellee. Still later, and almost two years after injury, appellee went to Jacksonville where Dr. V. W. Pryor examined him.

The cause has been tried twice. On the last trial appellee testified that he suffered continuously from headaches and his neck and shoulders gave him pain practically all of the time; that he could turn his head only with difficulty and to a very slight angle, and could do little physical work and that with difficulty. At the former trial he testified that he could not move his head over an inch either way, but after some moving pictures were made of him and exhibited at the last trial he stated that he had been able to move his head more at times than he could at others, but whenever he moved his head in any way from a forward position he suffered pain.

All of the doctors mentioned testified upon the trial, but to give a full summary of their testimony would serve no useful purpose, as actually appellant stresses the point that since appellee could and has, since his injury conducted a building contracting business, therefore, both factually and legally, he could not be totally disabled permanently. Suffice it to state for appellee that Dr. McKinney's testimony on the earlier trial was offered, (he having died in the meanwhile) the substance of which was that in his opinion appellee was totally and permanently disabled from doing manual labor; and Dr. Pryor testified he found muscle spasm over the cervical spine and much tenderness over appellee's rib cage, that in his opinion appellee had sustained a diaphragmatic hernia, "in other words the stomach had been pushed up into his chest, partially", that appellee could turn his head 45 degrees, that while appellee has tended to exaggerate his trouble, in this doctor's opinion he was totally and permanently disabled. It is sufficient to state for appellant, Dr. Rossman testified he had sent appellee to Dr. Leland Wilcox, an orthopedist, but in the doctor's recent examination of appellee he found tenderness and limitation of motion in the cervical spine, and his conclusion was that appellee's condition was indeterminate; he could find no end to it. Dr. Wilcox, for appellant, testified that appellee's principal complaints

were pain in his neck, back and shoulders; while he stated he found no muscle spasm, he said there was some straightening of the lordotic curve of the neck from muscle spasm but he did not attach much importance thereto; that he recommended occasional traction for neck and use of special collar; that he had examined appellee several times and in his opinion he could be passed upon objective symptoms alone for industrial work; he appeared to move his head freely on the June 3, 1959 examination, but, at the June 12, 1959, examination complained of soreness in chest which the doctor was unable to account for. Dr. Wilcox concluded his testimony by stating he did not think there was anything wrong with appellee. Dr. Coussons, also for appellant, testified he could find nothing objectively wrong with appellee and that he would pass him for industrial work, but, having in mind his complaints, he wouldn't pass him for work, but he could do some carpenter work.

■ Appellant also asserts, as mentioned above, that appellee under the undisputed evidence, as a matter of law, cannot be held to be totally incapacitated. By virtue of his training and experience he is still capable of acting, and does act, as manager or foreman of his contracting business. From this fact, appellant contends that loss of "earning capacity" such as an employee is fitted to do is the test to be applied and as appellee can still manage his contracting business he cannot be totally disabled, while appellee contends that the Workmen's Compensation Law is intended to insure against loss of capacity to earn wages as "an employee" of another. In view of the record made below, it is not necessary for us to decide between the positions taken. Whether one or the other, the trial court's definition given in the charge reads:

"You are instructed that the term 'Total Incapacity,' wherever it may appear in this charge, does not imply an absolute disability to perform any kind of labor, but a person physically disabled to such an extent or degree that he cannot perform the usual tasks of a workman in such a manner as to be able to procure and retain employment is ordinarily regarded as totally incapacitated."

No objection was made to this definition nor to the giving of the issues on total incapacity. For the purpose of this appeal, therefore, the legal yardstick to measure the issue of total incapacity is whether appellee could perform "the usual tasks of a workman in such a manner as to be able to procure and retain employment." Simmons & Simmons Const. Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415, 417; Casas v. Knorbin, Tex.Civ.App., 218 S.W.2d 289. The jury, upon sufficient evidence, has found appellee could not do so.

■■ Although appellee complained in his physical examinations that he had pains in his chest and abdomen and, on pressure, over the left thorax, not until three days before trial, did a physician identify this complaint as a diaphragmatic hernia (where a portion of the stomach extends through the diaphram up into the chest). Appellant's third point asserts the court erred in allowing evidence of this to be made in the trial, the suit being upon a general injury, when no claim of hernia was made before the Industrial Accident Board. The fourth point urges the court erred in failing to instruct appellee and counsel to refrain from mentioning the hernia, since there were no pleadings to support the hernia claim. Appellee's claim to the Board was "fell while on job, severely injuring entire spine, particularly cervical spine, shoulders, arms, head and hips *and other injuries* involving nerves and general health." (Italics added.) At the beginning of the trial, appellant moved to instruct counsel for appellee and his witnesses to refrain from making any claim for hernia or hernia benefits as result of the accident. This motion was overruled, and appellee was granted leave to file a trial amendment which was then filed asserting injury to his

"abdomen and to all organs and parts of the body * * * from the waist up * * *." Since no claim is made in this suit under section 12b of the Act relating to hernia, and since the term "hernia" as used in the Act is used in its popular sense rather than in the broad sense of the protrusion of an internal organ from its natural location, the points are without merit. Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137, 139; Royal Ind. Co. v. Jones, 201 S.W.2d 129. The court in the Jones case stated that in a general injury case, as is the present one, evidence showing one of the results of lifting or pushing was a complete or incomplete inguinal hernia has a bearing upon the employee's disability and extent thereof.

■ Appellant first learned only three days before the trial that the medical witness for appellee, Dr. Pryor, by deposition, claimed that appellee had sustained a diaphragmatic hernia. It promptly moved for a continuance to allow an additional physical examination of appellee, to be made by a specialist in internal medicine, in order to rebut the hernia claim. The court denied the motion, hence appellant's fifth point. While Dr. Pryor, one of several doctors who had recently examined appellee, was the only one who diagnosed appellee's symptoms as diaphragmatic hernia, we think the record shows clearly that appellee had complained from the first of chest and stomach pains, of difficulty in swallowing and breathing. The report of Dr. McKinney filed by appellee with the Board asserted that he was complaining of pain in his chest and abdomen. And this doctor's testimony at the first trial evidenced complaint of pain in chest and abdomen. When appellant's witness, Dr. Wilcox, examined appellee on June 24, 1957, appellee told the doctor of some trouble he had with his chest and stomach because his fellow-employee fell on him, but that this was at the time better. On the day before the trial started, after appellant had heard of claim of hernia, Dr. Coussons examined appellee for appellant. On this record the trial

court, in declining to grant appellant's motion for continuance for the purpose stated, did not abuse his discretion.

■■ Appellee was examined by appellant's three doctors during the week before the trial, under arrangement that appellee would be privileged to have his doctor participate in the examination. Through his counsel, appellee arranged with a Dr. Mann of Henderson to participate in the examinations at the office of Dr. Rossman in Alto, Dr. Wilcox in Tyler, and Dr. Coussons in Nacogdoches. Dr. Mann was present at the first examination, in Alto, but was not in the other two. Appellee's counsel fearing that counsel for appellant would comment on the fact that Dr. Mann, in failing to attend the last two examinations, felt there was little or nothing wrong with appellee, without obtaining Dr. Mann's own explanation thereof, suggested first to opposing counsel that he agree to make no comment in the presence and hearing of the jury about Dr. Mann's failure to attend the examinations. Upon counsel's refusing to agree to this, appellee's attorney caused him to be sworn and upon his taking the stand was asked the question: " * * * I asked you, did I not, to agree not to make any comment about the doctor's" failure to participate in the two examinations; whereupon motion for mistrial was made because of the highly prejudicial and improper conduct of appellee's counsel in asking the question. The record then is:

"Mr. Fulmer: We think it is in order, Your Honor, if he doesn't want to agree to that why I will just have to show it another way.

"The Court: Well, that last question is being withdrawn?

"Mr. Fulmer: That is withdrawn.

"Mr. Zeleskey: We move the Court to instruct the jury not to consider any statement made by counsel in the last question for any purpose concerning any issues in this lawsuit.

"The Court: Of course, the motion for mistrial will be overruled, the Jury will be instructed not to consider for any purposes in this case the last question propounded by the Plaintiff's counsel, Mr. Fulmer.

"Q. You did say, didn't you Ralph, after I talked to you advising that the doctor, I would not call him, Dr. James Mann as a witness, you did *aprise* me that you would take the position in this case that the reason he wouldn't come was because he saw Derrett and thought there was nothing wrong with him? A. Well, that was my opinion, you weren't going to bring him so he probably was going to say there wasn't anything wrong with him. If he was going to say there was you would bring him.

"Q. That's all."

Appellee next placed Mr. Rex Houston, a lawyer of Henderson, on the stand, who stated he was a close friend and lawyer of Dr. Mann; that Dr. Mann had tried to reach him at his law office before the doctor went to the first examination at Alto, but failed since he, Houston, was out of town. Upon returning to his office Houston called Dr. Mann. His testimony then was:

"Q. All right, when you called Dr. Mann state whether or not he sought advice concerning the advisability of him as a young doctor going to other doctors' offices and examining people where the other doctors had already seen them? A. Yes, he did.

"Q. And did you give him advice along that line? A. I sure did.

"Q. What was your advice?"

Here objection was vigorously made that the conversation between Houston and the doctor was hearsay as to appellant. Considerable colloquy then ensued between the lawyers in which it was admitted Dr. Mann was within the subpoena jurisdiction of the court. The court overruled the objection and the following took place:

"Q. State whether your advice was in favor of his participating and going through these examinations or against them? * * * A. What I advised him was with reference to whether one doctor should permit himself to go out of his county to another doctor's office and there he could watch that doctor perform an examination or to participate in it, I don't think he should engage in such and I so advised him."

Appellant's sixth and seventh points urge the court erred in admitting this answer of Mr. Houston upon the ground it was hearsay as to it. While the conversation took place out of the presence and hearing of appellant's representatives, the objected-to answer, in effect, comes down to this: "I advised Dr. Mann that he should not permit himself to go out of his county to another doctor's office and there participate in an examination." The essential factor attempted to be shown in the examination exemplified above was that since he had been advised not to participate in out-of-county examinations, Dr. Mann declined to attend the last two examinations. Since Dr. Mann was not present to testify, appellee produced the testimony of Mr. Houston to show circumstances tending to explain the doctor's action. The evidence was admissible upon this basis. It is recognized that statements made out of court by the witness himself may not ordinarily be admitted to bolster or strengthen his testimony as is discussed in Sec. 785 of McCormick & Ray, Texas Law of Evidence, Vol. 1, p. 566. However, the object of Mr. Houston's testimony was to prove he gave the advice to Dr. Mann, not that his advice was true, sound or unsound. "The general rule then is that evidence of written or spoken expressions when offered, not to prove the facts, if any, stated therein, but to show as an inference therefrom, the state of mind of the person by whom or to whom they were communicated, is not violative of the hearsay rule." Sec. 796, Vol. 1, p. 588, McCormick & Ray.

Appellant's eighth, ninth and tenth points complain of failure of the trial court to grant a mistrial following appellee's counsel asking Mr. Zeleskey while he was on

the stand the following question, (part of which was quoted above): "Q. And in that conversation before we started here Monday morning of this week on the 15th, I asked you, did I not, to agree not to make any comment about the doctor's appearing therewith, as taking part in the examination and not appearing here as a witness since I couldn't call him?" Counsel for appellant, having been so interrogated, immediately made motion for a mistrial upon the ground that the asking of such question was so highly prejudicial and inflammatory appellant could not receive a fair trial.

The question asked was highly improper. In the trial of a lawsuit, lawyers are free to make or refuse to make any agreements of the nature involved here with each other, and one refusing to make an agreement should not be subjected to questioning thereabout before the jury in an effort to either force agreement upon him or to put him and his client in a bad light before the jury. Wilkerson v. Missouri P. Ry. Co., Mo.App., 69 S.W.2d 299. Though counsel withdrew the question after the motion for mistrial was made and the court instructed the jury, upon appellant's request, not to consider the question for any purpose, we doubt that the harm done was wholly undone. But, toward offsetting whatever remaining harm there was, is the factor that after the question was withdrawn unanswered, counsel for appellant was allowed to testify that in his opinion failure of appellee to produce Dr. Mann as a witness was because he probably would not say there was anything wrong with appellee. We conclude the circumstances complained of fail to disclose reversible error.

In his deposition offered in evidence, Dr. Pryor was asked whether, when the diaphragmatic hernia occurred, it would be accompanied by pain to which he answered, "Yes".

"Q. Would it be continuous pain? A. Ordinarily, it would be intermittent pain.

"Q. How often? * * * A. Oh, I've seen 'em to complain to beat the dickens for a while of pain in the chest. I have a jeweler in Dallas who has one and he has an episode of pain maybe once every month or then every six months."

Appellant timely objected to the second sentence of the above answer because it was hearsay, irrelevant and immaterial to the issue. The court overruled it, and the eleventh point results. The record as made does not disclose the source of the doctor's knowledge. The complained-of sentence, therefore, cannot be held to be hearsay. Missouri Pac. Ry. Co. v. Sherwood, 84 Tex. 125, 19 S.W. 455, 459, 17 L.R.A. 643. And if irrelevant or immaterial, it was not prejudicially so.

Appellant's twelfth and thirteenth points will be discussed together. The 12th point asserts that since appellee's counsel in his opening argument referred to purported statements made by a prospective juror on voir dire adverse to him, he was guilty of misconduct in giving such unsworn testimony in his argument. The argument assailed was:

"I know that you will not let anything outside, any talk that you might have heard back during the time that it was going on, there was some talk going on back there and you folks probably appreciate that I know about it. But I am sure that you will not let any criticism enter into this case because you have got your own mind and you have got your own heart and you have got your conscience. You are the one that took the oath to follow the evidence in this case. Any prejudice that might have been expressed either way, you would be in awful shape to let your conscience be spoiled by what some prejudice was said."

The 13th point also complains that in his closing argument appellee's counsel gave unsworn testimony with reference to this same juror and in closing charged that she

(the juror) was trying to get on the jury and such was "not ethical", "not principle" and "not honor" because she was cursing counsel for appellee; and in the giving of this unsworn testimony counsel was guilty of prejudicial misconduct, leaving the inference that appellant or its counsel was guilty of unethical conduct, lacking in principle and without honor. The argument complained of is:

"Now I know that some of you have heard me talked about right over yonder while we were picking the Jury and that same person qualified trying to get on this case, but she is not on here, is she. And if I thought one of that kind was on here I would worry about this case, I wouldn't let you be in this case. That took place and I know you heard it. You are bound to have heard it because I heard it. And she said, oh, I will do everything fair, I will follow the evidence and cuss at me all the time. You people around her, do any of you people on the Jury appreciate that, is that the kind of moral that you breathe in, certainly not. I have not nothing to say about her but I would darn sure talk to her husband about it, if he had done it. It is not right, it is not ethical, it is not principle, it is not honor. I don't stand for anything like that and you don't either."

No objection was made to either argument at the time made, but after the jury retired and before verdict, appellant made its motion for mistrial based thereon, and other argument. The motion was overruled. The voir dire examination of the jury panel was reported in full by the court reporter, both in shorthand and by machine, and he testified on motion for new trial that he did not hear, nor did his machine record, any member of the panel talking adversely about counsel for appellee during such examination and no such statement was included in the transcript made by him thereof. No other person was interrogated on the subject. There appears of record no request by appellee to the trial court at the time of the purported statements made by the witness adverse to counsel to the panel, nor for that matter to the jury after it was empaneled, not to consider any voluntary statements, if any, as was referred to by appellee's counsel. This would have been the proper way to obtain relief. Nor did counsel in his remarks overtly disassociate appellant therefrom. However, when the two excerpts of argument are considered together, it cannot reasonably be said that it was an attack upon appellant or its representatives. While in the first excerpt counsel used the expression "any prejudice that might have been expressed *either* way" (italics added) thus leaving the effect of the language open, it is clear from the second excerpt that what the woman juror had said against appellee's counsel was of a personal nature, having no connection with appellant, as counsel concluded: "I have got nothing to say about her but I would darn sure talk to her husband about it, if he had done it." The effect of this language exculpates appellant—for why, if any of appellant's representatives were connected with the incident would counsel be asserting he would talk to her husband if he had done it? While the argument was improper, as out of the record, we do not think under the circumstances it injured appellant.

■ The fourteenth point complains of argument of appellee's counsel that in effect told the jury under the law appellee would have to pass a physical examination in order to get a job. We think the argument erroneous but no objection was made thereto at the time. An instruction to disregard it would have cured the error. Younger Bros., Inc. v. Myers, 159 Tex. ——, 324 S.W.2d 546.

■ The fifteenth point complaining of argument that appellee was totally incapacitated if unable to do his usual work as a carpenter presents no error since the

court sustained objection thereto and we think the language thereupon used by attorney for appellee, "What I was about to say when I was interrupted before I finished to show that he is not able to do the type of work that he was doing and was able to do", may reasonably be construed not to be a continuation of the erroneous argument. Appellant contended since appellee was able to do and did carry on contracting that he was not totally disabled, and we think counsel for appellee's last remark should be construed in that light.

■ Points of error 16, 17, 18 and 19, combined for presentation in appellant's brief, also complain of improper argument, none of which was objected to when made but each part of it was complained of in appellant's motion for mistrial at the conclusion of the argument. The 16th point asserts that it was highly improper for counsel to argue that appellant was obligated to produce a certain person as a witness when no control over that person was shown to exist in appellant. The complained-of argument was:

"He hadn't sold Guy Lee nothing. If they had, are you going to say yes that they had, they can still bring that man, I would be glad to reopen it, let them bring Mr. Wichard, let them bring anybody. That fellow Allen, my friends, and you know it as well as I do was out there for the purpose of gouging and punching that man to try to get him to turn his head."

Appellant argues that since it had no special control over Wichard, and who was subject to subpoena equally by either party, it was improper to presume that his testimony would have been adverse to it. We think appellant right in this. Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, 215 S.W.2d 904, by this court; 17 Tex.Jur. 305, 306. However, the point involved the credibility of a witness on a collateral issue and, therefore, the error is of little significance. Aultman v. Dallas

Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

■ The 17th point asserts that the following language in appellee's closing argument charged appellant's counsel with tampering with the jury:

"I am mighty glad that I am gifted with what talent I do have and with what voice I do have and he has talked about what we have done this time and what we have done last time. If he has got anybody on here that will hang the jury and I don't believe he has, then next time this man's neck may be still stiffer than it was before. That's what's been happening."

The natural meaning of the expression "If he has got" anybody on the jury that will hang it, is that a juror would be favorable to appellant's defense, and is the meaning we ascribe to it.

The 18th point contends that when appellee's counsel in his argument mentioned the $350 fee appellant was paying Dr. Wilcox for attending court and then argued, "I haven't got that kind of money to pay those kind of prices for doctors" he was comparing the relative wealth of the parties, and giving unsworn testimony. This kind of argument is improper. Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311.

The 19th point urges the trial court erred in overruling appellant's motion for mistrial made at the conclusion of the arguments because of the numerous acts of misconduct on the part of counsel for appellee during the course of his argument. We are cited to Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120, as supporting a reversal. But the argument in the cited case was much more vehement; it accused the railway company of intimidating its employe-witnesses, and charged that the company and its counsel were lacking in integrity. These are serious charges of highly inflammable and prejudicial nature. The improper arguments in the case pres-

ently before us were not of such nature and if objection had been made promptly in each instance the able trial court would no doubt have given proper instruction curing the error. On authority of King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855 and Louisiana & Ark. Ry. Co. v. Mullins, Tex.Civ.App., 326 S.W. 2d 263, 266, the 19th point is overruled.

The 20th point urges that the cumulative effect of all errors in the trial justify reversal. The only additional error other than that involved in consideration of the 19th point was under the 8th point, when counsel for appellant was questioned whether he had been asked to agree to refrain from making a certain comment before the jury. While the case was tediously tried, filling 674 pages of testimony when cases of this nature are ordinarily reported in a statement of facts not exceeding 200 pages, and there was a sharp difference between the parties as to extent of injury, the errors mentioned were not of that nature reasonably calculated to cause and probably did cause the rendition of an improper verdict. The judgment is therefore affirmed.