The AETNA CASUALTY & SURETY CO.,
Appellant,

v.

James A. WYATT, Appellee.

No. 6657.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 12, 1963.

Rehearing Denied Jan. 15, 1964.

King, Sharfstein & Rienstra, Beaumont, for appellant.

Keith, Mehaffy & Weber, Beaumont, for appellee.

McNEILL, Justice.

The issue here is whether the employee sustained total and permanent loss of the use of his left leg within the meaning of Section 12, Article 8306, Vernon's Ann.Civ. St. The jury found that he did and judgment was based thereon. The workman is a painter and in the trade is known as a combination-painter. A combination-painter is one who does all types of painting, using brushes, operating spray guns, boatswain chair work, ladder paint spraying, and as a paint sprayer is required to carry heavy pots weighing up to 100 lb., as well as air hose. In doing this work he is required to do stooping, lifting and climbing, and a good pair of legs is essential to this work.

On or about November 25, 1960, he was working as such for DuPont at its Beaumont plant and was climbing a ladder carrying a spray rig weighing about 50 lb. On the way up, he struck the kneecap of his left knee against the ladder with such force that he sustained sharp pain and had to go back down the ladder and rest a short while before he undertook to finish the work.

Appellant says that there was no evidence, or alternatively, insufficient evidence to sustain the finding that the employee's loss of use of his leg was total. It also says that there was no evidence, or alternatively, insufficient evidence to sustain the finding that the loss of use of his leg was permanent. The authority upon which appellant relies is Travelers Ins. Co. v. Seabolt (Sup.Ct.), 361 S.W.2d 204. There is much similarity between that case and the present one, as appellant ably illustrates. In Seabolt the workman was a pipefitter. He injured one hand and while he thereafter continued to work as a pipefitter he did not have the same use of and grip in his hand as he had previously and at times he was given work which would not require as much effort with his hand.

The employee in the present case after his injury to the knee continued to work 14 days for DuPont and was then laid off. When he injured his knee it became blue and was swollen for some time. It was shown that every time he would use his knee more than normal in his work it would swell up and pain him. After being laid off by DuPont he did several pieces of parking lot striping, which required the use of a machine that pushed along the ground to mark lines. This required no unusual use of his knees. Somewhat later, he obtained a job with Bethlehem Steel, a Beaumont shipyard, as a combination-painter. He worked a few weeks but was unable to perform the duties required—stooping, climbing, and working in tight places—and had to quit. Still later he obtained a job at the Goodyear plant, as a combination-painter but his work as such because of his knee was unsatisfactory to the foreman; but since he was Wyatt's friend, he did not lay him off but gave him the job of shop-boy. As shop-boy he received the same pay as a combination-painter. As such shop-boy it was his duty to mix paints, paint signs and generally keep up with the paint supplies. It was shown that the job of shop-boy only exists where there is a large number of painters working on the job. If there are less than 20 to 25 painters the place of shop-boy is eliminated. Wyatt held his job as shop-boy without material trouble although his knee did from time to time give him pain and would be sore. This job with Goodyear ran for about a year and until the construction work was finished. After that, he was out of work for a while. He got a job with Noblock Construction, but after 2 weeks had to give it up as being unable to do the painting assigned him. Shortly thereafter the foreman who was on the Goodyear job put him to work as shop-boy on the Monsanto construction job at Texas City. He was doing this shop-boy work at the time of the trial. He testified that his job there was about to end. When he was out of work he would sign up for unemployment compensation and the form he signed stated he was able to work. He collected several items of unemployment compensation. He stated he was married, had two children, and needed to work to support his family.

The testimony shows that the ordinary painter needs to have two good legs for in his work he bends, stoops, squats, and works in tight places from time to time.

The medical proof reveals that Wyatt has Chondromalatia in his left knee. This is a term describing a roughening of the undersurface of the kneecap. This condition may be caused by trauma. The cartilage under the kneecap becomes cracked and forms little fragments which become loose, ragged and roughened. This condition is made evident by soreness and swelling of the knee joint, and by a grinding or grating sound

when the knee joint is moved. And it will cause a momentary locking of the knee joint. From a few days after time of his injury Wyatt's knee upon movement would have this grinding sound and with the passage of time the sound has grown more distinct. Dr. Scott Wallace testified that Wyatt's knee injury is of the moderately severe type and that it will worsen as time goes on. Both Dr. Wallace and Dr. Paul Freshcorn testified that they would not pass Wyatt for employment in the type of work he was doing when he got hurt, on account of the condition of his knee.

This record indicates that the job of shop-boy is one that is not generally obtainable in the painting industry but may exist intermittently only when there are large groups of painters working on the same project. In order to determine its sufficiency as to whether the employee has lost the total use of his leg we must measure the evidence by the definition of "total loss" as given in the court's charge. Traders & General Ins. Co. v. Derrett, Tex.Civ.App., 340 S.W.2d 305. "Total loss" was there defined:

> "the term 'total loss of use of the leg' does not imply an absolute disability to perform any kind of labor, but such disability or incapacity of the leg that it disqualifies a person from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment requiring the use of said leg."

The fact that Dr. Wallace testified that Wyatt's knee condition would get worse as time went on, and that he would not pass him for work requiring stooping, squatting, climbing, carrying heavy objects, and for other work putting stress on his knee, distinguishes the present case from the Seabolt Case and we hold that the evidence is sufficient to support the jury's finding of total loss of use of the leg. Since the evidence predominately shows Wyatt's condition will not improve, the finding of permanent loss of use is justified. Having considered all the evidence on these questions and holding the evidence sufficient thereon, it follows necessarily that there was evidence to justify the findings as against the contention of no evidence.

Judgment affirmed.