Dr. G. G. PORTER et al., Appellants,

v.

Monte PURYEAR, Appellee.

No. 6289.

Court of Civil Appeals of Texas.

Amarillo.

April 26, 1954.

Rehearing Denied May 31, 1954.

Klett, Bean & Evans and Trout & Jones, Lubbock, Stephen L. Mayo and J. Edwin Flemming, Dallas, for appellants.

Bob Huff and J. H. Splawn, Jr., Lubbock, for appellee.

PER CURIAM.

In this cause judgment of the Court of Civil Appeals was rendered April 6, 1953, and is found in 258 S.W.2d 182. Appellee's motion for rehearing was overruled in a written opinion on May 11, 1953. This last opinion was not published as the same in overruling the motion of appellee also discussed errors believed to exist in the trial of the cause which might be eliminated in the event of a retrial of the case. On the issue of sufficiency of the evidence, the Supreme Court, 262 S.W.2d 933, sustained the judgment of this court remanding the case to the trial court but held that this court had erred in applying to this case the rule laid down by the Supreme Court in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1, and thereunder limiting the

proof of proximate cause solely to evidence produced through osteopathic physicians. On appellee's second motion for rehearing the Supreme Court, 264 S.W.2d 689, remanded the cause to the Court of Civil Appeals for the sole purpose of ruling on whether the evidence is sufficient to support the jury finding that the act of Baker in "injecting a spinal needle into the plaintiff's spinal cord or canal at a level above the first lumbar vertebra" was the proximate cause of plaintiff's paralysis.

■ It is recognized that the ruling of this court on the issue of insufficiency of the evidence is final and that this court is neither required, nor authorized, under King v. King, 150 Tex. 662, 244 S.W.2d 660, upon an assignment of insufficiency of the evidence to disregard all adverse evidence and consider only that which is favorable to appellee as has been contended by appellee's counsel in his brief before this court. Furthermore, the ruling herein made is not made under appellee's further statement that this court is under a mandate from the Supreme Court. Although it is not regarded that any such mandate exists, as asserted by counsel for appellee, upon a matter wholly within the jurisdiction of this court a mandate from the Supreme Court would be immaterial.

■ The Supreme Court of Texas, evidently following the theory advanced by the appellee in this cause, has expressly ruled that there is evidence in this case to support the issue of proximate cause under the principle that "the negligent act set in motion a natural and unbroken chain of events that led directly and proximately to a reasonably foreseeable injury or result." 262 S.W.2d 936 [6]. The Supreme Court's ruling that there is evidence in this case to support the issue of proximate cause under the above theory is one within the jurisdiction of the Supreme Court and is final and conclusive on the issue raised by the appellants' assignment of "no evidence". Under the ruling of the Supreme Court that there is evidence in this cause to support the issue of proximate cause under the above theory, the same will be here

ruled as sufficient to support the verdict of the jury and the judgment of the trial court is affirmed.

The above ruling disposes of the sole issue before this court. However, for the purpose of clarifying this court's position on the major issue raised in this cause, as viewed here, a brief statement is given with a view to elimination of any misconception of this court's position in this cause at the inception of this appeal and at the present time.

An examination of the original opinion of this court will reveal that the issue of proximate cause was adjudicated on the principle that under Bowles v. Bourdon, supra, this court was limited to the consideration of medical testimony by osteopathic doctors. It will be further noted from the same opinion that this court at the time of writing the original opinion reversing the trial court, in the sole thought of elimination of errors on a retrial, discussed in detail all the medical testimony— but solely in view of a retrial of the cause. However, upon being taken to task by appellee's counsel concerning the matter discussed in the original opinion this court specifically clarified its general discussion in the original opinion by a written detailed opinion overruling appellee's motion for a rehearing, from which opinion we hereinafter quote as outlining this court's original opinion on this cause of action.

The original opinion on motion for rehearing in this court was not published under the theory that the same dealt only with errors that might be eliminated on a retrial of the cause. A quotation from the same outlines this court's original opinion as to the paramount issue in this cause in the following language: " * * * an analysis of the medical testimony presented in the case leads to the inescapable conclusion that the proof in the cause *only* supports the issue that the spinal cord of appellee *was ruptured*, as pleaded by appellee, and that such *rupture* of the spinal cord, (*transverse myelitis*), was the *proximate cause* of appellee's *paralysis*. (Emphasis added.) * * * only a casual

reading of the original opinion will reveal that the court never at any time considered the ultimate issue as to proximate cause as being that of 'hemorrhage' but only as *rupture of the cord—transverse myelitis.* * * * It is obvious that the sole jury finding of 'needle injected in the cord' is not a finding under the evidence as to ultimate and controlling issue as to the proximate cause of appellee's paralysis. * * * Appellee quotes and underscores on page 11 of his motion for rehearing the final summation of his witness, Dr. Barry, as follows, which summation ably presents the *ultimate* issue as to proximate cause, 'A. No, it's *destruction* of the cord you're worried about. (Emphasis added herein by the court.)' ."

The statements detailed in the preceding paragraph have gone wholly unnoticed throughout the appeal from this court, unless eliminated by the Supreme Court in paragraph 6 of that court's original opinion hereinabove quoted wherein the Supreme Court quoted the rule as to "unbroken chain of events". If the issue here discussed is confined merely to the proposition of "sufficiency of the evidence" and "no evidence", it may well be observed that the fact that the evidence supports a subsidiary issue as to proximate cause does not necessarily establish that such evidence likewise supports the ultimate and controlling issue. But, this matter has been adjudicated by the Supreme Court as indicated hereinabove and we are bound thereby.

This court has thought so strongly on the proposition here discussed that it would have submitted certified questions to the Honorable Supreme Court had it not been recognized that the grave error in this cause, believed to exist in the cause at least in the opinion of this court, must now rest wholly within the realm of fundamental error in that the same has not been placed in issue by any assignment unless it be under the assignment of "no evidence" and "insufficiency of the evidence" as already adjudicated by the Supreme Court as to the issue "no evidence", at the time the cause was returned here. It is

further recognized that to clarify the issue here discussed in this court under the principle of fundamental error a detailed examination of the Statement of Facts would be required—this eliminates the principle of fundamental error.

However, in clarification of the record in this cause, as analyzed by this court, it is the opinion of this court that this cause of action has been determined upon a jury issue that Baker "injected a spinal needle into the plaintiff's spinal cord or canal at a level above the first lumbar vertebra" which is, at the most, a mere segment or subsidiary issue to the ultimate and controlling issue of *rupture of the spinal cord—transverse myelitis.* (Emphasis added.) As has been heretofore expressed by this court, the issue of "needle in the cord" is wholly unsupported by any pleadings in this record. This has never been disputed by even appellee's own counsel. The appellee pleaded that the needle "was inserted or pushed into plaintiff's *spine* somewhere between the first lumbar and sixth dorsal vertebrae, thereby causing a rupture and contusion of the spinal cord resulting in total paralysis of plaintiff's lower extremities." It is not here assumed that any reasonable mind would interpret "spine" as being the same as "cord" and it must be recognized that plaintiff's pleading is that "a *rupture and contusion* of the spinal cord" (Emphasis added) proximately caused the paralysis of the plaintiff. If this were not enough, a careful examination of the Statement of Facts reveals that appellee's sole proof by his medical experts is that insertion of the needle into the *spine ruptured* certain *blood vessels,* that the blood vessels when ruptured caused a hemorrhage, that the hemorrhage expanded and that the expanding of the hemorrhage entirely *cut off* the spinal *cord.* (Emphasis added.) All the medical testimony in this record will support the issue that a rupture or cutting across of the cord, transverse myelitis, will proximately cause paralysis of the type sustained by the plaintiff. Emphasizing this, it may be noted, as originally stated by this court, that even hemorrhage, though setting in action the unbroken chain of events, could not

be the ultimate and controlling issue in this cause in that the testimony of appellee's own experts reveals that the *extent of the paralysis* would depend on the *extent of the hemorrhage* and that total paralysis such as sustained by appellee could occur only from a hemorrhage massive enough to *sever the cord*. (Emphasis added.)

It has been the opinion of this court since the inception of this appeal, and such opinion is still retained, that plaintiff's counsel, although pleading and proving a rupture of the cord and consequent paralysis, instead of procuring a jury finding on this ultimate and controlling issue as pleaded and proved merely procured a jury finding on a segment of or subsidiary issue to the ultimate and controlling issue and wholly failed to obtain any finding whatsoever on the ultimate and controlling issue of rupture of the cord as pleaded by him. Further, a jury finding on a subsidiary issue cannot be transformed into a jury finding on the ultimate issue merely by application of the proximate cause principle that the act found in the subsidiary issue "set in motion a natural and unbroken chain of events" leading to the ultmate issue.

The problem which we have discussed hereinabove is not one wholly without substance as has been contended by counsel for appellee. The issue has been discussed here in that this court is of the further opinion that under existing decisions of the Supreme Court where a judgment in the cause of action, as here, is only supported by a jury finding on a segment of or subsidiary issue to the ultimate and controlling issue without any finding whatsoever by the jury on the ultimate and controlling issue as pleaded by the plaintiff and required to be submitted by Rule 279, Vernon's Texas Rules of Civil Procedure, the error, if properly raised here, will require a reversal of the judgment of the trial court. Further, though the issue may in some measure cut across the field of "no evidence" and "insufficiency of the evidence", the issue is correctly one governed by the requirement of Rule 279, supra, that the court "shall submit the controlling issues made by the written pleadings and

the evidence". The issue which has troubled this court is not new in the field of judicial discussion in this state as revealed by the following citations: 29 Texas Law Review 537; Porter v. Puryear, Tex., 262 S.W.2d 933, at page 938, first paragraph; Pickens v. Harrison, 151 Tex. 562, 252 S.W.2d 575, 579, 581. This last cited case being merely the converse of the situation here discussed but the issue being less material than the failure to submit the ultimate issue itself, while submitting only a subsidiary issue. Ratcliffe v. Ormsby, Tex. Civ.App., 298 S.W. 930, 117 Tex. 242, 1 S.W.2d 1084; Wichita Falls & Oklahoma R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, Syls. 4 and 5, and cases there cited; Williamson v. Texas Indemnity Insurance Co., 127 Tex. 71, 90 S.W.2d 1088, Syl. 3, 5; Rodriguez v. Higginbotham—Bailey— Logan Co., Tex.Civ.App., 172 S.W.2d 991, writ refused; Colbert v. Dallas Joint Stock Land Bank of Dallas, 129 Tex. 235, 102 S.W.2d 1031, Syls. 11, 13, 14; Lincoln County Mut. Fire Ins. Co. v. Goolsby, Tex. Civ.App., 240 S.W.2d 402; Dreeben v. Sidor, Tex.Civ.App., 254 S.W.2d 908, Syl. 4–6.

In view of the fact that this case has finally turned on a ruling on the single issue of sufficiency of the evidence, which ruling is within the sole jurisdiction of this court, a clarification is required as to the statement as made in the opinion of the Supreme Court on appellee's second motion for rehearing. This statement is found in 264 S.W.2d 689, at page 690 [3]: "Certain expressions in the opinion of the Court of Civil Appeals indicate that it was inclined to discount the cogency and probative force of some of the testimony of the doctors of medicine because of answers made to questions propounded on cross-examination." As stated hereinabove, it is not believed that this court was in error in following King v. King, supra, or erred in its opinion that under such authority this court has not only been authorized, but has in fact been adjured, to consider all the evidence pro and con in weighing the issue of sufficiency of the evidence. An examination of the original opinion of this

court in the cause here in issue will reveal that it is true that considerable quotation was made in the original opinion from the testimony of Dr. J. T. Krueger of Lubbock, Texas. It is likewise true that Dr. Krueger's testimony as produced on the trial of the cause was brought out solely in cross-examination of such witness by attorneys for the appellants. But, it must be further recognized that appellee's counsel in effect endorsed this witness by taking his deposition in behalf of the appellee although he did not see fit later to introduce the direct testimony of such witness. The testimony of Dr. Krueger of Lubbock was discussed in detail in the original opinion of this court as he was one of three Lubbock physicians who actually examined the appellee for the purpose of treatment of the appellee and his testimony also aptly illustrated the principle herein enunciated which we have here sought to analyze and discuss in clarifying the position of this court on an issue vital to procedure in the courts.

However, in the strict light of the statement enunciated by the Supreme Court inferring that this court had not properly discharged its duty as to examining the evidence in this cause or that its method of weighing evidence was faulty, it may be well to reveal some of the elements actually considered by this court in weighing the testimony of the medical experts and in either accepting or discounting the "cogency and probative force of some of the testimony of the doctors of medicine." Dr. Krueger, whose testimony was introduced solely from the cross-examination of such witness, testified without controversy that he had administered approximately 12,000 spinal blocks and had completed approximately 40,000 surgical procedures. Although the Supreme Court supported its opinion on the testimony of Dr. R. H. Tull, Dr. W. A. V. Cash, and Dr. Barry, it is not believed that this was intended as the final criterion as to the weight to be given to all the evidence in the cause. It must be further noted that an examination of the testimony of these three medical witnesses as detailed in the opinion of the Supreme

Court reveals that the Supreme Court's summation of their testimony does not vary materially from this court's summation of the testimony of the same three experts as detailed in the original opinion of this court. The observation is not wholly without merit that Tull, Cash, and Barry merely examined the appellee for the sole purpose of testifying in a trial of the cause. It was the original opinion of this court, which opinion is still held, that the examination of the 5-volume Statement of Facts in this cause was not only done with extreme care but that the evidence therein was weighed in an entirely unbiased and proper manner. It is true, as assumed by the Supreme Court, that this court did give some considerable weight to Dr. Krueger's testimony and considered the testimony of some other medical experts in the cause as being entitled to very little weight but this court proceeded upon an unbiased and sound basis in assessing the value of the testimony of each medical expert. Illustrating, as compared to Dr. Krueger's 12,000 spinal blocks and 40,000 surgical procedures, a careful examination of the record will reveal from the testimony of Dr. W. A. V. Cash himself that he did not give spinals at all, that he merely examined appellee when he was under the care and treatment of Drs. Krueger, Huett, and O'Laughlin of Lubbock, Texas, that he hadn't done much surgery in the last five years, had never personally given a spinal anesthesia, didn't know how to indicate on a drawing where the gray matter was in the spinal area, was a general practitioner and not eligible for certification by the National Board in any field of medicine, on being handed defendant's Exhibit 6, a photographic plate showing a body of a vertebra with the spinal process with its motor and sensory route, was unable to say whether or not the plate illustrated a cross-section of the spinal cord, could not say whether the photographic plate represented what the spinal cord looked like or not, stated that there were about 300 blood vessels in relation to the spinal cord but was unable to take a text of Gray's Anatomy and find definitely the number of blood vessels in the area, could not tell where the cerebral spinal fluid

was located in the cord, could not.determine on obtaining droppings of spinal fluid from a spinal needle at what 'point in the canal the needle had penetrated to, had been told where the duramater, the arachnoid, and the piamater were located but had forgotten where they were located, on a diagram representing the areas of anesthesia patients was unable to recognize any of the areas.

The above exposition of some of the evidence revealed in the 5-volume Statement of Facts as examined by this court may present a rather blunt answer to the question of whether this court properly weighed all the medical testimony. It is believed that the testimony revealed above will adequately support the opinion of this court that it not only carefully examined all the testimony in the record but it was not amiss in its method of weighing all the testimony for the purpose of either accepting or discounting such testimony in proportion to its value whether developed on either direct testimony or on cross-examination of the witness.

The judgment of the trial court is affirmed.